884 P.2d 403

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Alexander TORO, Defendant–Appellant.**

**No. 17163.**

Intermediate Court of Appeals of Hawai'i.

Oct. 28, 1994.

As Amended Nov. 2, 1994.

Reconsideration Denied Nov. 17, 1994.

Certiorari Denied Dec. 8, 1994.

Dwight C.H. Lum, on the brief, Honolulu, for defendant-appellant.

Donn Fudo, Deputy Pros. Atty., City & County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE, and ACOBA, JJ.

1. Hawai'i Revised Statutes (HRS) § 707–732(1)(b) (Supp.1992) states:

(1) A person commits the offense of sexual assault in the third degree if:

. . . .

(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such a person to have sexual contact with the person[.]

2. The basis for the extended term motion was that Defendant was a persistent offender. HRS § 706–662 (Supp.1992) states in relevant part:

ACOBA, Judge.

Defendant–Appellant Alexander Toro (Defendant) was indicted on two counts of Sexual Assault in the Third Degree, in violation of Hawai'i Revised Statutes (HRS) § 707–732(1)(b) (Supp.1992)[1] for conduct which allegedly occurred on August 20, 1992. Both counts charged that on that date, Defendant placed his hand on the breast of a female not his spouse, who was less than fourteen years old.

Jury trial began on February 16, 1993. On February 18, 1993, the jury returned a verdict of not guilty as to Count I and guilty as to Count II. Sexual assault in the third degree is punishable by a term of imprisonment of five years. HRS § 706–660 (Supp. 1992). However, the State moved, pursuant to HRS §§ 706–661 (1985) and –662(1) (Supp. 1992)[2], for an extended term of imprisonment of ten years under Count II (hereafter extended term motion). The circuit court granted the extended term motion. Defendant appeals from the judgment filed May 21, 1993.

Defendant claims the circuit court committed errors in:

(1) allowing the State to elicit "prejudicial character evidence" concerning Defendant;

(2) refusing Defendant's jury instruction No. 2 pertaining to consideration of the evidence by the jury, and giving the court's own instruction No. 2;

(3) refusing Defendant's jury instruction No. 6 concerning rejecting testimony of witnesses, and giving Court's Instruction No. 10;

(4) sentencing Defendant to an extended term of imprisonment;

**§ 706–662 Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:

(1) The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make such a finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.

(5) imposing cruel and unusual punishment by sentencing Defendant to an extended term of imprisonment; and

(6) denying Defendant a hearing on restitution ordered by the court.

On appeal, the State does not contest Defendant's entitlement to a restitution hearing, and does not dispute Defendant's contention that his extended term sentence was improper.[3] It concedes that Defendant's sentence should be vacated and the case remanded for new sentencing proceedings because the record is "unclear" as to whether the court's sentencing decision was based on proof beyond a reasonable doubt, and whether the court followed the rules of evidence at the sentencing hearing, all of which are required under *State v. Kamae*, 56 Haw. 628, 548 P.2d 632 (1976).[4] The State having agreed that the matter of sentencing should be remanded to the sentencing court for a new hearing on its extended term motion, it is unnecessary to reach Defendant's fourth, fifth, and sixth points for the purpose of deciding this appeal.

In his reply brief, however, Defendant maintains that his sentence should be modified "to the ordinary term of five years" by this court, pursuant to HRS § 641-16 (1985).[5]

 Under a plain reading of HRS § 641-16, an appellate court has the discretion to affirm, reverse, or modify the sentence of a trial court in a criminal case on appeal "as in its opinion the facts and law warrant." *See State v. LeVasseur*, 1 Haw. App. 19, 30, 613 P.2d 1328, 1335, *cert. denied,*

449 U.S. 1018, 101 S.Ct. 582, 66 L.Ed.2d 479, *reh'g. denied,* 449 U.S. 1134, 101 S.Ct. 958, 67 L.Ed.2d 122 (1980). *Compare Territory v. Kunimoto,* 37 Haw. 591, 596 (1947) (under the predecessor of HRS § 641-16, such "judicial power should be exercised with caution and only upon a manifest showing from the evidence of an abuse of discretion or that the severity of the punishment imposed is a result of prejudice or passion"). Because the trial court did not apply the appropriate sentencing standards to the extended term motion in the first instance, and remand would also allow the circuit court to reconsider other sentencing alternatives in fashioning an appropriate sentence, we do not believe a modification of the sentence is warranted on appeal.

We turn, then, to the three points remaining.

## I.

Prior to admission of the purported character evidence complained of, much of the evidence had been adduced. The complaining witness, Defendant's stepdaughter (witness), had testified that on August 20, 1992, she was in Defendant's home with her sister, her cousin, and her stepsister, Defendant's daughter (daughter). At one point, all of the girls entered Defendant's bedroom and lay on the bed with Defendant. When the mail carrier arrived, the girls left the bedroom to retrieve the mail. After they returned, witness lay on the bed by Defendant, reading a magazine.

---

**3.** Defendant argued that the trial court abused its discretion because it repeatedly referred to matters in his presentence report in its findings of fact and conclusions of law although the report was never offered into evidence at the extended term hearing. Defendant also argued that the facts used to support a finding that he was a persistent offender were not proved beyond a reasonable doubt.

**4.** *State v. Kamae*, 56 Haw. 628, 635, 548 P.2d 632, 637 (1976), held that an extended term hearing "is a separate criminal proceeding apart from the trial of the underlying ... offense." And since it "is a criminal proceeding ... all relevant issues should be established by the state beyond a reasonable doubt." *Id.* The court also "conclude[d] that the ordinary rules of evidence

should apply to an extended term sentence hearing." *Id.* at 638, 548 P.2d at 638-39.

**5.** HRS § 641-16 (1985) states in pertinent part:

The ... intermediate appellate court ... may affirm, reverse, or modify the ... sentence of the trial court in a criminal matter. It may enter such order, judgment, or sentence, or may remand the case to the trial court for the entry of the same or for such other or further proceedings, as in its opinion the facts and law warrant....

In case of a conviction and sentence in a criminal case, if in its opinion the sentence is illegal or excessive it may correct the sentence to correspond with the verdict or finding or reduce the same, as the case may be.

With respect to Count I, witness testified that Defendant took the magazine from her, put his arm around her, and with his hand over her clothes, touched her breast for approximately two minutes. Defendant then told her to hang up the laundry and told daughter to take a bath. All of the girls left the room.

At that time, witness did not realize the import of what Defendant had done. Later, witness would only recall the incident when she "was thinking back if there was something else he did[.]"

With respect to Count II, witness stated that she subsequently returned to the bedroom, laid on the bed with Defendant, and Defendant "got his right arm and he put his left arm over my shoulder again and then with his right arm he—under my clothes he started rubbing my breast." Defendant warned witness not to tell her mother, Defendant's wife.

However, later that evening, witness told her mother what Defendant had done. Witness' mother, Mrs. Toro, testified that witness was "very quiet" and "very upset" the night following the incident, and that she did not want to return home. Mrs. Toro later confronted Defendant with the accusations made by witness. Defendant, however, indicated that nothing had happened.

Mrs. Toro moved out of the home, and Defendant thereafter contacted her on three occasions. On the first occasion, Defendant claimed that witness crawled into bed with him and started touching him, making him feel uncomfortable, and he removed her from the bed. Next, Defendant claimed that he was wrestling with witness and "it was an accident" and he "accidentally bumped her there." In his third conversation with Mrs. Toro, Defendant said, "[Y]ou know, [I] didn't do anything, all [I] did was touch her little [expletive] tit."

On August 26, 1992, a police officer interviewed witness. At that time, witness only recounted the incident comprising Count II.

In defense, Defendant called daughter, who indicated that between June and the date of the sexual assault, witness was jealous of her. With respect to Count I, daughter did not recall Defendant ever reaching for witness while all of the girls were on the bed with Defendant, but revealed that witness did tell her on the date of the incident that Defendant touched witness' breast.

Defendant testified that witness was his stepdaughter and Mrs. Toro was his wife, and that witness and daughter were always competing with each other. As to Count I, Defendant denied that he touched witness' breast. He maintained that daughter and his other stepdaughter were lying next to him and witness was lying on the outside of the bed. Then, the girls began rubbing his stomach, "playing Budda [sic]," and tried to push him off the bed, at which time he ordered them out of the room.

In connection with Count II, Defendant related that while witness was on the bed with him, he "just kind of picked [witness] up and pushed her aside." When he picked her up his "arms" were "on her chest level"—"in the stomach, chest area, right about even with [the] rib cage area." Defendant denied touching witness' breast. He also denied admitting to his wife that he had touched witness' breast.

On cross-examination, Defendant recalled stating in a prior statement to the police that he felt uncomfortable about witness' conduct because he believed her behavior was sexual in nature. It was at this point that the purported character evidence was elicited.

The prosecutor asked Defendant about purchasing bras for daughter and witness. Defendant objected on the ground of relevancy, and the court overruled the objection.

Q. [By prosecutor] O.K. Now isn't it true that you went shopping with [daughter] and [witness] a couple of days before this incident?

A. [By Defendant] All four of them.

Q. O.K. And isn't it true that you went shopping and at that time, sir, you bought for [witness] and for [daughter] bras?

A. Yes.

Q. And isn't it true that your wife came home and she got very upset because you not only had purchased bras and gone shopping with them for such a personal

garment, an intimate garment, but that they were sitting at the table in their underwaer [sic] when she came home?

[Defense counsel]: Your Honor, I would object.

[Defendant]: No, that's not true.

[Defense counsel]: I object, that's irrelevant.

THE COURT: Overruled.

[Defendant]: No, that's not true.

[Prosecutor]: Q. It is true that you purchased bras for [daughter] and [witness]?

A. I had purchasd [sic] bras for [daughter]. And again, being in the situation that I was [daughter] had asked me to purchase them for her volleyball, that she needed bras. [Daughter] is a little larger than [witness], but there was no way I could get by without purchasing [sic] for [witness] also.

Q. And you did purchase these bars [sic] for the girls a couple of says [sic] before this incident?

A. O.K., let me explain that they're sports bras, they're not bras bras. They're sports bars [sic] that that girls jog with, they're not bra bras, they're sports bras.

Q. Please answer the question, Mr. Toro. If you don't understand it please ask me to rephrase it. O.K.

A. Well, they're not just bras.

Q. Now—and it's your—it was your statement to detective Mimaki that the fact that [witness] bounced into your room made you uncomfortable?

A. O.K.

Q. But you felt comfortable enough to buy her underwear?

A. They're athleteic [sic] sports bra, people use them out—as outside T-shirtrs [sic]. They're like a T-shirt, they're not a bra bra. It's a—it's a full-length T-shirt that hugs the body. And that's what it was, from a sporting goods store. It wasn't a bra bra, it was a full-length T-shirt or tank top type bra.

On redirect examination, Defendant reiterated that the incident involved "sports bras."

Q. O.K. Now let me ask you about these sports bras that you were referring to. What is a woman's sport's bra?

A. It's like a man's tank top, just body snug.

Q. O.K. Now who asked you to purchase that—this article of clothing?

A. [Daughter] did, for her volleyball team.

Q. O.K. Where did you take them to purchase, where did you take [daughter] to purchase this?

A. At a woman's shoe store, its a basketball or sports store at pearl—Pearl Ridge.

Q. Did [daughter] pick it out herself?

A. Yes, she did.

Q. Do you know if she tried it on to see if it fits?

A. I think she did.

Q. You didn't go in the dressing room with her, did you?

A. No.

On recross examination, Defendant agreed he had said he "probably did" touch the witness:

Q. And would you agree that right before that you told the detective that you didn't touch her and if you did touch her, I probably did, I didn't do it sexually?

A. Yes.

On further redirect examination, Defendant attempted to explain what he had told the detective.

Q. Referring to that same paragraph when you were speaking to the detective, at that point in time did you inform him how you had touched [witness]?

A. I think I did.

Q. O.K., what did—what did you tell him?

A. That I pushed her aside by the ribs or in that area.

### A.

The fact that Defendant purchased "bras" for daughter and witness and the allegation that the girls had been "sitting at

the table in their underwaer [sic]" "a couple of days" before the incident were not relevant to any of the events which occurred on August 20, 1992. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Hawaiʻi Rules of Evidence (HRE) Rule 401. "Evidence which is not relevant is not admissible." HRE Rule 402.

■ On appeal, the circuit court's ruling on the question of whether evidence is relevant under HRE Rule 401 is reviewed under the right/wrong standard. *State v. Alston*, 75 Haw. 517, 538, 865 P.2d 157, 168 (1994). The purchase of bras by Defendant would not tend to make more probable any fact relating to the elements of sexual contact by Defendant. This evidence would not aid the fact finder in determining the proof of a fact in controversy. The effect of such evidence would be, as Defendant contends, to imply that Defendant had "an inordinate sexual interest in young girls." We hold that the court was "wrong" in admitting such evidence.[6]

### B.

■ So holding, we consider whether this error affected the substantial rights of Defendant. Under Hawaiʻi Rules of Penal Procedure (HRPP) Rule 52(a), "[a]ny error ... which does not affect [Defendant's] substantial rights shall be disregarded." Conversely, where Defendant's substantial rights are affected, there is " 'reversible error.' " 3A C. Wright, *Federal Practice & Procedure: Criminal* § 851 at 294 (2d ed. 1982). To determine whether the error affected the substantial rights of Defendant, we "view the record from all four corners." *Wright v. United States*, 301 F.2d 412, 414 (10th Cir. 1962). Thus, " 'even where error occurs, there will be no reversal where on the record as a whole, no prejudice to appellant has resulted.' " *State v. Nakamura*, 65 Haw. 74, 80, 648 P.2d 183, 187 (1982) (quoting *State v. Rivera*, 62 Haw. 120, 127, 612 P.2d 526, 531

(1980)). In determining whether an error which might prejudice the jury against Defendant affected Defendant's substantial rights under HRPP Rule 52, "the question is[ ] not were [the jurors] right in their judgment[ ] regardless of the error or its effect upon the verdict[,]" but "[i]t is rather what effect the error had or reasonably may be taken to have had upon the jury's decision." *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946). For, "[t]he inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." *Id.* at 765, 66 S.Ct. at 1248. Put another way, the question is "whether the error itself had substantial influence" upon the jury's verdict. *Id.*

It is impossible, of course, to account for all possible effects an error might have on any jury. In those rare cases where the error's effect or lack of effect may be clearly discerned from the record, the appellate court's task is simple. But, in other cases, we must draw rational inferences from the record to determine what "impact ... the thing done wrong [had] on the minds of other men [and women], not on [our] own, in the total setting." *Id.* at 764, 66 S.Ct. at 1247–48. In doing so, we are not required to exclude all hypotheses, but are to determine "what effect the error ... reasonably may be taken to have had upon the jury's decision." *Id.*

■ While, obviously, the error had no effect with respect to Count I, we review the record to determine what impact, if any, the error had on the jury with respect to Count II. Defendant argues that because the challenged evidence implied that he had an "inordinate sexual interest in young girls," his credibility before the jury was tarnished.

But, as to the incident involving the girls sitting around the table in their underwear, Defendant denied this occurred. Furthermore, although Mrs. Toro allegedly confront-

---

6. Although Defendant asserts, for the first time on appeal, that admission of the evidence violated Hawaiʻi Rules of Evidence (HRE) Rule 404, we need not consider HRE Rule 403 or Rule 404 since we find the evidence was irrelevant, the precise objection made at trial.

ed Defendant about this, she did not testify that the alleged incident occurred.

As to purchasing "bras" for daughter and witness, Defendant explained that the bras were "sports bras" used "as outside T-shirtrs [sic]." According to Defendant they were "full-length T-shirt or tank top type bra[s]" "from a sporting goods store." Defendant further asserted that he had purchased the clothing at daughter's request because she needed it "for her volleyball," and that he purchased one for witness because "there was no way [he] could get by without purchasing [sic] for [witness] also."

Defendant's testimony denying the "underwear" incident and explaining the nature of the "bras" and the reason for purchasing them was not rebutted. The jury did not receive any evidence that contradicted Defendant's explanations. Neither party made any reference to these two matters in final argument. In light of Defendant's uncontested denial and explanation, the effect of the prosecutor's questions could not reasonably be taken to have had a significant impact on the jury's decision.

On the other hand, the record shows, as discussed, *supra,* that the jury had ample evidence to find Defendant guilty of Count II. The jury received witness' account of what occurred and Defendant's alleged admissions to his wife. Too, Defendant did admit that he picked witness up and his "arms" were "on her chest level." Moreover, as indicated above, Defendant agreed that in a statement to the police he had said that "if [he] did touch her, [he] probably did, [he] didn't do it sexually[.]"

Consequently, viewing the record as a whole, it does not appear that the error had any influence of a substantial nature on the jury's consideration of the evidence.

## II.

Points two and three of Defendant's appeal rest, initially, on his objection that the court's instructions did not "track[ ] the language [used by] the [Hawai'i Supreme Court's] standing committee on jury instructions, and ... that [the committee's] instructions should

... be submitted to the jury, insofar as they may be clearer."

The Hawaii [Hawai'i] Standard Jury Instructions Criminal (December 1991) (HAWJIC) is a product of the cooperative effort of judges and attorneys to encompass and to standardize rules of law in jury instructions, and is widely used by the circuit courts. However, as a general proposition, the circuit courts are not required to give such instructions. The introduction to the HAWJIC indicates that "[n]othing herein contained shall be construed as an approval by the Supreme Court of the State of Hawaii [Hawai'i] of the substance of any of said instructions." Additionally, although HRPP Rule 30 allows parties "to request by number the pattern instructions known as the Hawaii [Hawai'i] Standard Jury Instructions Criminal (HAWJIC)[,]" it reiterates that "[n]othing herein contained shall be construed as an approval by the Supreme Court of the State of Hawaii [Hawai'i] of the substance of any of said instructions." HRPP Rule 30(a). Under HRPP Rule 30, the crux of the court's instructions is that they "afford to the jury an adequate and understandable charge." HRPP Rule 30(c). Thus, the court was not required to give the criminal pattern instructions adopted by the Hawai'i Supreme Court's standing committee on pattern criminal jury instructions, but had the discretion under HRPP Rule 30 to give such instructions as it believed would be adequate and understandable to the jury.

The ultimate question on appeal is whether the instructions, as a whole, correctly stated the law. We review, therefore, Court's Instructions No. 2 and No. 10 in that context.

### A.

Specifically, Defendant maintains that the opening paragraph of Court's Instruction No. 2 was misleading. The challenged paragraph stated, "You must consider only the evidence which has been presented to you in this case in light of your own *observations, life experiences* and common sense." (Emphasis added.)

In contrast, Defendant's requested instruction No. 2 (HAWJIC 3.03) did not use the

terms "observations" or "life experiences." It stated, "You must consider only the evidence which has been presented to you in this case and such inferences therefrom as may be justified by reason and common sense."

Defendant complains that the use of the terms "observations" and "life experiences" created "a danger that the jury [would] rely on improper past experiences to reach their decision." While we think the phrase "reason and common sense" to be adequate and preferable and do not sanction the use of the language "own observations [and] life experiences," we do not believe this instruction, when taken together with the other instructions given, should result in reversal.

■ The fact that a paragraph in an instruction may be objectionable will not result in reversal if, read together with the other instructions, the instructions as a whole correctly state the law and are not inconsistent or misleading:

"In determining the sufficiency of a particular instruction, or part of a charge, it is not to be considered apart from its context, or the rest of the charge. Both in civil and in criminal cases the instructions of the court must be read together as one connected whole, to ascertain whether they correctly declare the law. The omissions or inaccuracies of one instruction may be cured by the contents of the other instructions, or some of them, and if, when the instructions of the court are considered as a whole, they correctly state the law and are not inconsistent or misleading, the fact that a particular instruction or isolated paragraph may be objectionable, as inaccurate or misleading, will not constitute ground for reversal."

*State v. Pinero*, 75 Haw. 282, 292, 859 P.2d 1369, 1374 (1993) (quoting *State v. Travis*, 45 Haw. 435, 438, 368 P.2d 883, 886 (1962)).

■ The jury was instructed that it was not to be influenced "by passion or prejudice against the defendant." Significantly, the jury was also told that Defendant's guilt was to be established beyond a reasonable doubt and that reasonable doubt was doubt "about the defendant's guilt which arises from the evidence presented or from the lack of evidence and which is based upon reason and common sense." Hence, the jury was instructed that its determination of the question of guilt was to be based upon reason and common sense after "careful and impartial consideration of the evidence." Thus, we hold that while the use of the phrase "own observations [and] life experiences" is not sanctioned, where the other instructions properly limited the discretion of the jury to those factors which were relevant in arriving at a decision, there was no reversible error in advising the jurors that they might consider the evidence in light of their "own observations [and] life experiences" as well as their common sense.

### B.

■ Lastly, we consider Court's Instruction No. 10. Defendant requested instruction No. 6 (HAWJIC 3.10), which read as follows: "If you find that a witness has deliberately testified falsely to any important fact or deliberately exaggerated or suppressed any important fact, then you may reject the testimony of that witness except for those parts which you nevertheless believe to be true."

The trial court, instead, gave its instruction No. 10 which stated, "If you find that a witness has deliberately lied or overstated or tried to hide any important fact, then you may reject all or any part of that witness' testimony."

The only material difference between the two instructions is the phrase "except for those parts which you nevertheless believe to be true," found in Defendant's requested instruction No. 6, but absent from Court's Instruction No. 10. Because of "seemingly contradictory statements" Defendant gave to the police, he asserts that the court's instruction "failed to clearly inform the jury that even if they disbelieve[d] a particular witness, they should consider . . . those portions which they still believe[d] to be true."

But even standing alone, the instruction that the jury "may reject . . . any part of that witness' testimony" apprises the jury that it may consider the part not rejected. While

**350**

we believe the language of HAWJIC 3.10 to be preferable, we do not find that the court's instruction would imply to the jurors that they were not to consider portions of the testimony which they believed to be true, if they rejected other parts of a witness' testimony. By indicating that the jury might reject all or any part of the witness' testimony, the instruction clearly imparted to the jury the conclusion that any part not rejected might be considered by the jury.

Moreover, that the jury was to take into account the evidence it believed to be true or credible was amply communicated in the other instructions given. *See Territory v. Buick,* 27 Haw. 28, 43 (1923). The jurors were told in other instructions that they were "the sole judges of the effect and value of the evidence," and that it was the jury's "exclusive right to determine whether and to what extent a witness should be believed and to give weight to the testimony accordingly." Also, the jury was instructed that, "Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony." Finally, the jury was informed that, "When a defendant testifies, his credibility is to be tested in the same manner as any other witness." The omission of the subject phrase in Court's Instruction No. 10, therefore, would not mislead the jury.

■ We hold, consequently, that the omission of the words "except for those parts which you nevertheless believe to be true" from an instruction informing the jury that it might reject "all or any part of the testimony" of a witness it has found has testified falsely, is not approved, but does not consti-

tute reversible error where the reasonable inference drawn is that the jury was free to consider that part of the testimony it did not reject, and other instructions indicated that the jury was to consider evidence it found credible.

When reviewing challenges to jury instructions we must consider the instructions "as a whole." *State v. Villeza,* 72 Haw. 327, 333, 817 P.2d 1054, 1057 (1991). *Accord State v. Young,* 8 Haw.App. 145, 153, 795 P.2d 285, 290 (1990) (quoting *State v. Halemanu,* 3 Haw.App. 300, 306, 650 P.2d 587, 592 (1982)). Having reviewed the instructions as a whole, we do not find them to be "prejudicially insufficient, erroneous, inconsistent or misleading." *Villeza,* 72 Haw. at 333, 817 P.2d at 1057. *Accord Young,* (quoting *Halemanu,* 3 Haw.App. at 306, 650 P.2d at 592).

### III.

Accordingly, we find no reversible error in the receipt of the challenged evidence or in the giving of Court's Instructions No. 2 and No. 10. We affirm Defendant's guilty conviction as to Count II of the indictment. However, we vacate the sentence imposed as to Count II, including the court's restitution order. The case is remanded for resentencing and for a new hearing on the State's extended term motion if it chooses to renew the motion, and on the court's imposition of restitution against Defendant.