990 P.2d 115

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Randolph L. HATORI, Defendant–Appellant.**

**No. 22145.**

Intermediate Court of Appeals of Hawai'i.

Nov. 17, 1999.

interest, the interest is the principal.

possessing alcohol. However, because Defendant's Class B felony conviction for possession of a drug was proved by the same facts as would establish the lesser Class C felony offense of possessing contraband, we vacate Defendant's conviction and remand the case to the Circuit Court of the First Circuit (the court) to enter a conviction as to the Class C felony as required by *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977).

### I.

On May 7, 1997, a complaint was filed against Defendant, charging him with Promoting Prison Contraband in the First Degree, Hawai'i Revised Statutes (HRS) § 710–1022(1)(b) (1993). Circumstances leading to the charge are not in dispute. On April 29, 1997, Defendant, an inmate at the Hālawa Correctional Facility, was standing in line for breakfast. Apparently, after Defendant's repeated requests for butter, a corrections officer placed his hand in Defendant's pocket to determine if it contained a butter packet. A struggle between the two ensued, and Defendant's pocket was torn. The officer recovered from Defendant's pocket a "tubular kind of rolled-up paper wrapped—wrapped kind of tight in cellophane." The item was later identified as a marijuana cigarette.

Defendant's jury trial in the instant case began on October 6, 1997. He was convicted as charged on October 9, 1997. At the November 17, 1998 sentencing hearing, the court imposed a sentence of five years' probation, and at Defendant's request, additionally ordered Defendant to "enter and remain in My Brother's Keeper Treatment Program [(a one-year residential in-patient drug treatment program)] until clinically discharged ... with the concurrence of the Adult Probation Division."

### II.

On appeal, Defendant raises three points of error. First, he contends that the court "usurped" the jury's "constitutional right" to nullify the charges against Defendant. Second, Defendant argues that HRS § 710–1022 violates his constitutional right to equal protection under the law. Third, Defendant

T. Stephen Leong, on the briefs, Honolulu, for defendant-appellant.

Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and ACOBA, JJ.

#### Opinion of the Court by ACOBA, J.

We hold that a defendant in a criminal case has no substantial right to a jury nullification instruction, that is, an instruction informing the jury that it may acquit a defendant contrary to the law given by the court and the evidence, or to the deletion of instructions which inform the jury that it must follow the law. Therefore we reject a claim to the contrary raised on appeal by Defendant–Appellant Randolph L. Hatori (Defendant).

We hold further that the legislature may without violating the equal protection clause, impose a greater statutory penalty on a prisoner who possesses marijuana as opposed to

maintains that HRS § 710–1022 as applied, infringes on his constitutional right against cruel and unusual punishment. Plaintiff–Appellee State of Hawai'i (the State), on the other hand, urges that the instructions simply described the jury's role as fact finder and the court was not required to give an instruction on the jury's power of nullification. The State also asserts that Defendant has failed to substantiate his constitutional claims.

### III.

Defendant argues that the instructions by the court advising the jury to "bind" itself to the law, and the reiteration of this proposition by the deputy prosecuting attorney (the prosecutor) undermined the jury's "power [of] nullif[ication]." He points to several instructions, discussed below.

During jury selection, the court instructed the jury that the court's duty was to decide the law to be applied in the case and the jury's duty was to apply the law to the facts as it found them.[1]

The judge also directed the jury to follow the law "notwithstanding their personal opinions."[2] After the jury was impaneled, the

judge reiterated the duty of the jurors to "follow the law."[3] Finally, at the close of the case, the court told the jurors to follow the instructions it had given them.[4]

In addition to the foregoing instructions, Defendant contests the prosecutor's voir dire, in which two venirepersons were asked whether they would be able to "follow the law as instructed by ... the court." The prosecutor also asked another venireperson whether she "would have any trouble binding [her]self to the law as explained by the court[.]" Defendant contends these questions "systematically divested" the potential jurors of their power of nullification. Finally, Defendant objects to the prosecutor's summation, in which the prosecutor reminded the jurors that "after being selected as a juror in this case, all of you swore that you would follow the law."

### IV.

#### A.

The court's instructions to the jurors were general statements regarding their duty to follow the law given by the judge. Placed in context, the instructions described the respective duties of the judge and jury.

1. The Circuit Court of the First Circuit (the court) explained the duties of the judge and jury as follows:

    Under the law, the jury is the sole and exclusive judges [sic] of the facts. That is, if you become jurors in this case, you will decide the believability, the credibility, or the reliability of all of the witnesses, how to look at and consider the evidence, what weight and effect will be given to that evidence. *The judge is the trier of the law, and in that capacity, the judge decides what law applies to the particular case. The judge gives the jury the law in instructions. The jury decides what the facts are and applies those facts to the law in arriving at what is called a decision or verdict in the case.*
    (Emphasis added.)

2. The court instructed the jury as follows:

    This is a criminal case, and in any criminal case, we have certain rules of law. And I'm going to mention a few of those rules now. One of the rules of law that applies to this case is that *the jury must follow the law as the judge gives the jury the law in instructions. And this is so notwithstanding any personal opinions that a jury may have as to what the law is or should be.* Stated differently, this is how that rule works. Under our system of government,

we are all entitled to have and to express our opinions. However, *when people become jurors, the law expects them to set aside their personal opinions as to what laws are or what laws should be and that they follow the law as the judge gives them the law in instructions.* Is there anyone seated within the jury box who believes that he or she cannot bind himself or herself into following that rule?
    (Emphases added.)

3. The court stated:

    Ladies and gentlemen of the jury, I would like to give you some general cautionary instructions which are binding upon you throughout your services in this case.
    You, the jury, are the sole and exclusive judges of the facts, but *you must follow the law as I give you the law in instructions. And this is so notwithstanding any personal opinions you may have as to what the law is or should be.*
    (Emphasis added.)

4. The court's final admonition to the jury to follow its instructions stated, "You are the exclusive judges of the facts of this case. However, you must follow these instructions even though you may have opinions to the contrary."

The instructions explained the jurors' duty to adhere to the law as stated by the court, and their obligation to avoid personal opinions about the law from influencing their decision.[5] " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading[.]' " *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio,* 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)) (emphasis omitted). For the reasons stated herein, we believe the given instructions, when read and considered as a whole, were not so affected.

### B.

We note that Defendant did not object to these instructions or to the prosecutor's remarks during jury selection or at trial. In *State v. Sawyer,* 88 Hawai'i 325, 966 P.2d 637 (1998), the Hawai'i Supreme Court stated that "jury instructions to which no objection has been made at trial will be reviewed only for plain error. If the substantial rights of the defendant have been affected adversely, the error will be deemed plain error." *Id.* at 330, 966 P.2d at 642 (citations omitted). Additionally, this court has held, in addressing a defendant's failure to object to the prosecutor's statements made during closing argument, that "[m]atters not raised by objection in the trial court are still reviewable at the discretion of the appellate court." *State v. Schmidt,* 84 Hawai'i 191, 201, 932 P.2d 328, 337–38 (App.1997) (citing *State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 675 (1988) (citations omitted)). Applying plain error analysis,[6] we conclude no substantial rights of Defendant were affected.

### V.

### A.

Defendant's position apparently is that an instruction on jury nullification should have been given,[7] or that the instructions should implicitly allow for nullification. The jury's nullification power has been described as "the undisputed power of the jury to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence." *State v. Bonacorsi,* 139 N.H. 28, 648 A.2d 469, 470–71 (1994) (internal quotation marks and citations omitted). Thus, "[n]ullification occurs when a jury—based on its own sense of justice or fairness—refuses to follow the law and convict in a particular case even though the facts seem to allow no other conclusion but guilt." Weinstein, *Considering Jury "Nullification": When May and Should a Jury Reject the Law to Do Justice?,* 30 Am.Crim. L.Rev. 239 (1993). *See also* Leipold, *Rethinking Jury Nullification,* 82 Va. L.Rev. 253 (1996) ("Jury nullification occurs when the defendant's guilt is clear

---

5. The instructions given were reflective of pattern jury instructions. For example, instruction No. 1.01 in *Hawai'i Standard Jury Instructions Criminal* (HAWJIC) (December 1991) [hereinafter "HAWJIC"] provides that

   [t]he judge is the judge of the law, and at the conclusion of the case, after you have heard all the evidence and the arguments of counsel, *I will instruct you in full as to the law applicable to the case. It will be your duty to accept the law as defined in these instructions and to follow it.*

   (Emphasis added.) Additionally, HAWJIC No. 3.01 states, "The court will instruct you now concerning the law which you must follow in arriving at your verdict. You are the exclusive judges of the facts of this case. However, *you must follow these instructions even though you may have opinions to the contrary."* (Emphasis added.) The introduction to HAWJIC states that "[n]othing contained herein shall be construed as an approval by the Supreme Court of Hawai'i of

the substance of any of said instructions." However, the pattern instructions are instructive, in that they contain general language a court may consider when crafting jury instructions. In *State v. Toro,* 77 Hawai'i 340, 884 P.2d 403 (App.1994), this court noted that the HAWJIC were "a product of the cooperative effort of judges and attorneys to encompass and to standardize rules of law in jury instructions, [which are] widely used by the circuit courts. However, as a general proposition, the circuit courts are not required to give such instructions." *Id.* at 348, 884 P.2d at 411.

6. Hawai'i Rules of Penal Procedure Rule 52(b) states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

7. We note that Defendant–Appellant Randolph L. Hatori did not submit any instruction regarding nullification.

beyond a reasonable doubt, but the jury, based on its own sense of justice or fairness, decides to acquit.").

Tracing its roots to early American colonial days, the doctrine stems from a time when "juries were nearly always recognized as having the power to judge both law and fact." *United States v. Moylan*, 417 F.2d, 1002, 1005–06 (4th Cir.1969). It has been suggested that jury nullification "made a great deal of sense at a time when American law was in its infancy and American jurisprudence not yet fully developed[,]" and was explained by "the almost total absence of an established legal profession; ... the pervasive influence of natural rights philosophy; and ... the shared experience of living under—and then rebelling against—a tyrannical form of government." *People v. Douglas*, 178 Misc.2d 918, 680 N.Y.S.2d 145, 152 n. 17 (1998).

### B.

The jury's power to nullify is not expressly set forth in the text of the federal constitution, and "the origins of jury nullification remain elusive." King, *Silencing Nullification Advocacy Inside the Jury Room and Outside the Courtroom*, 65 U. Chi. L. Rev 433, 444 (1998). The jury nullification power is said to be rooted in the sixth amendment's guarantee to jury trial. W.R. LaFave & J.H. Israel, *Criminal Procedure* § 21.1(g), at 701 (1984). The ninth and tenth amendments have been suggested as the source of such power because "[c]itizens of this country are a prime heir to the common law right of jury nullification[ ] ... [and] powers not delegated to the United States nor prohibited to the States remain reserved to the States or to the people." [8] Barnet, *New York Considers Jury Nullification: Informing the Jury of its Common Law Right to Decide Both Facts and Law*, 65 N.Y. State B.J. 40, 44 n. 11 (1993). Plainly, at the least, the nullification power rests in the unreviewable nature of an acquittal in a criminal case, because "a jury verdict of not guilty is not subject to reversal or to review in any manner whatsoever." W.R. LaFave & J.H. Israel, *supra*, at 700.

Despite the dispute as to its source, the jury's nullification power has been "recognized and accepted as an integral and essential aspect of our criminal jury system[.]" *Henderson v. State*, 976 P.2d 203, 206 (Wyo. 1999). According to Professors Alan Scheflin and Jon Van Dyke, the power is an "integral part of the law itself, serving the unique and vital function of smoothing the friction between law and justice, and between people and their laws." Scheflin & Van Dyke, *Merciful Juries: The Resilience of Jury Nullification*, 48 Wash. & Lee L.Rev. 165, 168 (1991) [hereinafter *Merciful Juries* ].

### C.

While the existence of jury nullification is not questioned, the contemporary issue is "whether juries should be encouraged to nullify, and in particular whether they should be told by the judge that they have this power." Leipold, *supra*, at 257. The two competing interests which emerge on the question is the jury's long recognized power to nullify on the one hand, and the jury's duty to adhere to the court's instructions on the other hand. *See People v. Wilson*, 972 P.2d 701, 706

8. The constitutions of Indiana, Maryland, and Georgia contain provisions which empower the jury to determine both law and fact, but courts have limited the application of these provisions. Although the Indiana Constitution provides that "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts[,]" it has been held that "that right is not without limitation[ ] ... [and the jury] may not arbitrarily reject the instructions of the court." *Fuquay v. Indiana*, 583 N.E.2d 154, 156 (Ind.Ct. App.1991). Maryland's constitution states that "[i]n the trial of all criminal cases, the Jury shall be Judges of Law, as well as of fact," but the Fourth Circuit Court of Appeals has indicated that juries in criminal cases are not given unrestricted powers in applying the law, and in fact, "[t]he powers of the jury are hedged in a number of ways." *Wyley v. Warden, Maryland Penitentiary*, 372 F.2d 742 (4th Cir.1967). The Georgia Constitution provides that "[i]n criminal cases ... the jury shall be the judges of the law and the facts." Yet, "it has long been settled that this language ... means that jurors are 'made absolutely and exclusively judges of the facts in the case [and] they are, in this sense only, judges of the law.'" *Hall v. State*, 201 Ga.App. 133, 410 S.E.2d 448, 451 (1991) (quoting *Harris v. State*, 190 Ga. 258, 9 S.E.2d 183 (1940)) (citation omitted). Hawai'i does not have constitutional provisions similar to Indiana, Maryland, or Georgia.

(Colo.Ct.App.1998), *as modified on denial of reh'g, cert. denied,* (March 1, 1999).

It is contended that giving such instructions informs the jurors of their responsibility to produce a verdict that is fair in the eyes of their community. *Merciful Juries, supra,* at 183. *See also* Scheflin & Van Dyke, *Jury Nullification: The Contours of a Controversy,* 43 Law & Contemp. Probs. 51 (1980) [hereinafter *Jury Nullification*] (arguing that failure to give jury nullification instructions ultimately results in complacent jurors); Van Dyke, *The Jury as a Political Institution,* 16 Cath. Law. 224 (1970) (arguing that giving jurors instructions that they possess "the power to act mercifully" would better achieve justice). *See generally,* J. Van Dyke, *Jury Selection Procedures: Our Uncertain Commitment to Representative Panels* (1977).

However, we recognize that "[m]ost courts have held that trial courts should not instruct the jury that it may nullify a verdict of guilt." *Wilson,* 972 P.2d at 706. *See e.g., People v. Moore,* 171 Ill.2d 74, 215 Ill.Dec. 75, 662 N.E.2d 1215 (1996); *State v. Willis,* 218 N.W.2d 921 (Iowa 1974); *Bonacorsi,* 648 A.2d 469; *State v. Bjerkaas,* 163 Wis.2d 949, 472 N.W.2d 615 (Ct.App.1991); *Henderson,* 976 P.2d 203; *Nollsch v. City of Rock Springs,* 724 P.2d 447 (Wyo.1986). In the landmark case of *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), Justice Harlan stated that it is the duty of the juries in criminal cases to follow the law as given by the court.

> We must hold firmly to the doctrine that in the courts of the United States it is *the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence. Upon the court rests the responsibility of declaring the law; upon the jury, the responsibility of applying the law so declared to the facts as they, upon their conscience, believe them to be.* Under any other system, the courts, although established in order to declare the law, would for every practical purpose be eliminated from our system of government as instrumentalities devised for the protection equally of society and of individuals in

their essential rights. When that occurs our government will cease to be a government of laws, and become a government of men. Liberty regulated by law is the underlying principle of our institutions.

*Id.* at 102–03, 15 S.Ct. 273 (emphasis added).

The risk posed by jurors' disregard of the law has provided the impetus for rejecting nullification instructions. It has been held that giving a nullification instruction would indeed "be negating the rule of law in favor of the rule of lawlessness." *Moylan,* 417 F.2d at 1006. This is because the state's "interest in the application of the correct law to the facts by the jury ... can only be sustained when the jury is properly instructed on the law." *Henderson,* 976 P.2d at 207.

■ Consequently, although "[t]he power of jury nullification exists ... [a] defendant has no right to have the jury defy the law or ignore the undisputed evidence." *People v. Montanez,* 281 Ill.App.3d 558, 217 Ill.Dec. 459, 667 N.E.2d 548, 553 (1996). While "[i]t is one thing to recognize jurors have the power not to do their duty[, it is] quite another to tell them they have a right not to do their duty." *Willis,* 218 N.W.2d at 924. In *Willis,* the Supreme Court of Iowa rejected a jury nullification instruction, stating that

> [j]ury nullification exalts the goal of particularized justice above the ideal rule of law. We are persuaded the rule of law should not be subverted. A central theme in our constitutional system is that no [person] is above the law and all are equally accountable to it. The people are sovereign, but they exercise their sovereignty through government rather than juries.

*Id.*

The instructions given by the trial court in *Henderson* are almost identical to the instructions given in the instant case. The defendant in *Henderson* contested the trial court's instructions which stated, "It is your duty to follow the law as I instruct and to decide all questions of fact submitted to you[,]" "I will now instruct you on the law you must apply[,]" and "It is your duty to follow the law." *Henderson,* 976 P.2d at 206. In rejecting the defendant's challenge, the Supreme Court of Wyoming reiterated that a

defendant in a criminal case does not have the right to an instruction on jury nullification.

> *Instruction about jury nullification, or on the other hand the excising of instructions that the jury is to follow the law, is not a right afforded to a criminal defendant in this state or elsewhere.* There is no reason to overturn the long-settled rule that the jury should be instructed to follow the law. The jury instructions given in this case were eminently correct, and there was no error in giving them.

*Id.* at 207 (emphasis added).

## VI.

There are no Hawai'i statutes which directly address the court's and the jury's functions with respect to law and fact.[9] However, Hawai'i Rules of Evidence Rule 1102 (1993) specifically provides that *"[t]he court shall instruct the jury regarding the law applicable to the facts of the case,* but shall not comment upon the evidence. It shall also inform the jury that they are the exclusive judges of all questions of fact and the credibility of witnesses."[10] (Emphasis added) Similarly, in *State v. Amorin,* 58 Haw. 623, 628, 574 P.2d 895, 898 (1978), the supreme court pointed out that "the role of the jury is to determine only the facts and apply the law as given by the court."

Historically, jury nullification has been viewed as salutary in some instances, as where jury nullification resulted in the acquittals of persons who violated the Fugitive Slave Act of 1850 by assisting runaway slaves, *see United States v. Dougherty,* 473 F.2d 1113, 1121 (D.C.Cir.1972); H. Kalven & H. Zeisel, *The American Jury* (1966), but unjust in other circumstances, as where on "numerous occasions in the South white ju-

ries acquitted white defendants of crimes against Blacks." Scheflin, *Jury Nullification: The Right to Say No,* 45 Calif. L.Rev. 168, 212 (1972). Granted that a jury's exercise of its nullification power may "ameliorate the rigors of laws that may be too harsh when applied in certain cases[,]" *Jury Nullification, supra,* at 111, yet "there is no way to know if the [jury] nullification power is used more for good than for ill[.]" Leipold, *supra,* at 284. On balance we are persuaded by the position adhered to by most jurisdictions. Therefore, we conclude that Defendant had no substantial right to an instruction informing the jury of jury nullification or to the deletion of an instruction informing the jurors that they were to follow the law as given them by the court. It follows that the prosecutor's comments did not infringe on any of Defendant's substantive rights. We conclude that plain error was not committed by the court.

## VII.

### A.

Defendant next contends that HRS § 710–1022 violates his right to equal protection of the laws under the federal and state constitutions[11] because it imposes a more severe penalty for a prisoner convicted under HRS § 710–1023 of marijuana possession than for a prisoner convicted of other contraband possession, such as that of alcohol.[12] HRS § 710–1022 states, in part:

> (1) A person commits the offense of promoting prison contraband in the first degree if:
>
> . . . .
>
> (b) Being a person confined in a correctional or detention facility, *the person intentionally* makes, obtains, or *possesses a* dangerous instrument or *drug.*

---

9. In cases involving contributory negligence claims, Hawai'i Revised Statutes (HRS) § 663–31(d) (1993) expressly mandates the court to instruct the jury "regarding the law of comparative negligence where appropriate."

10. There is no federal counterpart to Hawai'i Rules of Evidence Rule 1102 (1993).

11. The fourteenth amendment to the United States Constitution provides, in part, "nor shall

any State . . . deny to any person within its jurisdiction the equal protection of the laws." Article I, section 5 of the Hawai'i State Constitution similarly states, "No person shall be . . . denied the equal protection of the laws."

12. The parties do not cite in the record the specific prison rule or regulation prohibiting possession of alcohol.

(2) ... A *"drug" shall include* dangerous drugs, detrimental drugs, harmful drugs, intoxicating compounds, *marijuana,* and marijuana concentrates as listed in section 712–1240 [ (1993 & Supp.1998).[13]]

(3) *Promoting prison contraband in the first degree is a class B felony.*

(Emphases added.) HRS § 710–1023 (1993) states:

(1) A person commits the offense of promoting prison contraband in the second degree if:

(a) The person intentionally conveys known contraband to any person confined in a correctional or detention facility; or

(b) Being a person confined in a correctional or detention facility, the *person intentionally* makes, obtains, or *possesses known contraband.*

(2) "Contraband" means *any article or thing which a person confined in a correctional or detention facility is prohibited from obtaining* or possessing by statute, rule, regulation, or order.

(3) *Promoting prison contraband in the second degree is a Class C felony.*

(Emphases added).

According to HRS § 706–660 (1993), the general sentencing statute, a person convicted of a class B felony may be sentenced to a maximum prison term of ten years, while a person convicted of a class C felony faces a maximum prison term of five years. Defendant argues that subjecting prisoners convicted of marijuana possession to the longer Class B felony sentence under HRS § 710–1022(1)(b) than imposed on prisoners convicted of possession of alcohol under HRS § 710–1023(1)(b), is arbitrary because, in his view, both marijuana and alcohol have similar effects on the human brain.

■ In analyzing Defendant's equal protection claim, we observe that possession of marijuana is not a fundamental right. The

supreme court has rejected the argument that "the interest of the individual in possessing and using marihuana [wa]s within the class of interests to which the state and federal constitutions afford[ed] the highest degree of protection." *State v. Kantner,* 53 Haw. 327, 332–33, 493 P.2d 306, 310 (1972).

■ We also conclude that Defendant is not a member of a "suspect class." A suspect classification is one "where the class of individuals formed has been 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " *State v. Sturch,* 82 Hawai'i 269, 276 n. 8, 921 P.2d 1170, 1177 n. 8 (App.1996) (quoting *Nachtwey v. Doi,* 59 Haw. 430, 434 n. 5, 583 P.2d 955, 958 n. 5 (1978) (citation omitted)). Convicted persons who possess illegal drugs while in prison are not within a class of people historically recognized as "command[ing] extraordinary protection" from the State.

■ If a suspect classification or fundamental right is not involved, our inquiry of an equal protection claim is whether there is a rational basis for the challenged statute.

Because "suspect classifications or fundamental rights are not at issue," Defendant's claim that he was denied equal protection of the laws is subject to the "rational basis test." Under the rational basis test, our inquiry is limited to whether the statute "rationally furthers a legitimate state interest."

*Sturch,* 82 Hawai'i at 276, 921 P.2d at 1177 (quoting *Baehr v. Lewin,* 74 Haw. 530, 571–72, 852 P.2d 44, 64, *reconsideration granted and clarification granted in part,* 74 Haw. 650, 875 P.2d 225 (1993) (brackets, internal quotation marks, and citation omitted)). Under the rational basis test, we need only determine whether HRS § 710–1022 ration-

---

**13.** Under HRS § 712–1240 (1993 & Supp.1998), "marijuana" is defined as

any part of the plant (genus) cannabis, whether growing or not, including the seeds and the resin, and every alkaloid, salt, derivative, preparation, compound, or mixture of the plant, its

seeds or resin, except that, as used herein, "marijuana" does not include hashish, tetrahydrocannabinol, and any alkaloid, salt, derivative, preparation, compound, or mixture, whether natural or synthesized, of tetrahydrocannabinol.

ally furthers a state interest in subjecting a prisoner's marijuana possession to punishment greater than that for possession of other contraband, such as alcohol.

### B.

The supreme court has held as a general proposition, that the Legislature may treat possession of marijuana differently from possession or use of alcohol:

> The issue then is ... whether there are sufficient dissimilarities between alcohol and marihuana to support different legislative treatments. *We think alcohol and marihuana are sufficiently dissimilar to justify dissimilar legislative treatment.* Alcohol is a drug about which much is known concerning the long-term effect on the human body; of marihuana, much less is known. On that basis alone, treatment dissimilar to that given alcohol is justified, at least until scientific research conclusively establishes the long-term effects of the drug marihuana.

*Kantner*, 53 Haw. at 331, 493 P.2d at 309 (emphasis added). Thus, the supreme court in *State v. Renfro*, 56 Haw. 501, 505, 542 P.2d 366, 370 (1975), rejected the appellants' argument that HRS § 712-1247[14] *inter alia*, violated their right of equal protection. The supreme court held:

> *[W]e do not find that the legislature's differing treatment of alcohol and marijuana is so arbitrary and irrational as to violate equal protection.* Perhaps the legislature has chosen to exempt alcohol from proscription because it has found, in the wake of the disastrous "noble experiment" of Prohibition, that it is largely impossible to protect society from alcohol. *The fact that the legislature may find itself unable to protect society from one evil (alcohol) does not compel the conclusion that it is arbitrary and irrational for the legislature to attempt to protect against another sub-*

*stance (marijuana) which the legislature rationally deems harmful.*

*Id.* at 505–06, 542 P.2d at 370 (footnote omitted; emphases added.

It cannot be disputed that criminalization of the possession of marijuana or alcohol is within the legislature's police power, *State v. Baker*, 56 Haw. 271, 278, 535 P.2d 1394, 1398 (1975); *Renfro*, 56 Haw. at 503, 542 P.2d at 368, and that the legislature's decision to accord different statutory treatment to the possession of these drugs does not violate the equal protection clause. We believe it evident that the legislature may adopt statutes punishing the possession of both marijuana and alcohol by prisoners. Based upon the dissimilar treatment generally accorded possession of marijuana as opposed to alcohol, there is a rational basis for punishing a prisoner's marijuana possession more severely than a prisoners's alcohol possession.

### C.

In salutary fashion, the State points out however, that Defendant's conviction under HRS § 710-1022(1)(b), in light of the similar provisions of HRS § 710-1023, violates the *Modica* rule. In *State v. Modica*, 58 Haw. 249, 567 P.2d 420 (1977), the Hawai‘i Supreme Court stated:

> *[W]here the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor,* under either of two statutory provisions, and the elements of proof essential to either conviction are exactly the same, *a conviction under the felony statute would constitute a violation of the defendant's rights to due process and the equal protection of the laws.*

*Id.* at 251, 567 P.2d at 422. The *Modica* rule " 'applies equally to the possibility of prosecution and conviction under two differentially classed felonies.' " *State v. Arceo*, 84 Hawai‘i 1, 22, 928 P.2d 843, 864 (1996) (quoting *State*

---

14. As set forth in *State v. Renfro*, 56 Haw. 501, 502, 542 P.2d 366, 368 (1975), the text of HRS § 712–1247 considered by the supreme court stated:

(1) A person commits the offense of promoting a detrimental drug in the first degree if he [or she] knowingly and unlawfully:

....

(e) Possesses one or more preparations ... or substances of an aggregate weight of 2.2 pounds or more, containing any marijuana[.]

....

(2) Promoting a detrimental drug in the first degree is a class C felony.

*v. Aluli,* 78 Hawai'i 317, 324, 893 P.2d 168, 175 (1995)) (Levinson, J., concurring)

The elements of Promoting Prison Contraband in the First Degree, HRS § 710–1022(1)(b), and Promoting Prison Contraband in the Second Degree, HRS § 710–1023(1)(b) overlap. In relevant part and under both the first and second degree offenses, a person is guilty if he or she is "confined in a correctional or detention facility"; and "intentionally makes, obtains or possesses" contraband, either a "drug" in the first degree offense, HRS § 710–1022(2), or "known contraband" in the second degree offense, HRS § 710–1023(2).

A "drug" as defined in HRS § 710–1022(2) is contraband and marijuana is expressly included in the term "drug." Correspondingly, known contraband is defined as "any article or thing which a person confined in a correctional or detention facility is prohibited from obtaining or possessing by statute, rule, regulation, or order." HRS § 710–1023(2). Marijuana possession is prohibited by several statutes.[15] *See e.g,* HRS § 712–1244 (1993) (Promoting a harmful drug in the first degree); HRS § 712–1245 (1993) (Promoting a harmful drug in the second degree); HRS § 712–1247 (1993) (Promoting a detrimental drug in the first degree); HRS § 712–1248 (1993) (Promoting a detrimental drug in the second degree); HRS § 712–1249 (1993) (Promoting a detrimental drug in the third degree). Therefore, marijuana is also a "known contraband," the possession of which is statutorily prohibited, and consequently, falls within the purview of HRS § 710–1023(1)(b). In-prison possession of marijuana would thus constitute both a Class B felony as defined in HRS § 710–1022(1)(b)

and a Class C felony as defined in HRS § 710–1023(1)(b).[16]

**D.**

■ Citing *State v. Wallace,* 80 Hawai'i 382, 910 P.2d 695 (1996), the State proposes that this case be remanded with instructions to set aside the Class B felony conviction under HRS § 710–1022(1)(b) and to enter a conviction under HRS § 710–1023(1)(b), the Class C felony. The defendant in *Wallace* had been convicted, *inter alia,* of one count of promoting a dangerous drug in the first degree, *id.* at 387, 910 P.2d at 700, which the supreme court vacated based on insufficiency of evidence. *Id.* at 414, 910 P.2d at 727. The supreme court determined that "remanding the case for retrial on *lesser included offenses* offends neither the fifth amendment to the United States Constitution nor article I, section 10 of the Hawai'i Constitution." *Id.* (citation omitted, emphasis in original). We conclude that HRS § 710–1023(1)(b) is a lesser included offense of HRS § 710–1022(2)(b).

Convictions of lesser included offenses are governed by HRS § 701–109(4) (1993), which states in relevant part:

A defendant may be convicted of an offense included in an offense charged in the indictment or the information. *An offense is so included when:*

(a) *It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]*

(Emphases added.) In *State v. Burdett,* 70 Haw. 85, 762 P.2d 164 (1988), the supreme court determined that

---

15. The record does not reveal, and the parties did not identify the rule or regulation prohibiting a prisoner's possession of marijuana while incarcerated in a detention or correctional facility.

16. We note, as Plaintiff-Appellee State of Hawai'i points out, that HRS § 710–1023(2) (1993) has been amended and now defines "contraband" as "any article or thing [which], <u>other than a dangerous instrument or drug as defined in section 710–1022(2), that</u> a person confined in a correctional or detention facility is prohibited from obtaining or possessing by statute, rule, [regulation,] or order." 1999 Haw. Sess. L. Act

23, § 1, at 29 (bracketed material deleted; new material underscored). House Bill No. 1492 was introduced to remove the overlapping definition of "contraband" in HRS § 710–1023(2) with the definition of "drug" in HRS § 710–1022(2) (1993). Hse. Stand. Comm. Rep. No. 1388, in 1999 House Journal, at ___. The bill was signed into law on April 22, 1999. 1999 Haw. Sess. L. Act 23, at 29. We observe that the amendment in House Bill No. 1492 has resolved the *Modica* problem in HRS §§ 710–1022(1)(b) and – 1023(1)(b), and based on our discussion in part VI, these statutes would not present an equal protection issue.

HRS § 701–109(4)(a) adopted the common law definition of lesser included offenses that an offense is included when it is established by proof of the same or less than all the facts required to establish the offense charged. In other words, an offense is included if it is impossible to commit the greater without also committing the lesser.

*Id.* at 87–88, 762 P.2d at 166 (citations omitted).

Our discussion has already revealed that possession of marijuana under HRS § 710–1022 would be established by the same facts required to establish a violation of HRS § 710–1023. Hence, we determine that the offense in HRS § 710–1023 is a lesser included offense of that in HRS § 710–1022, and that the only proper conviction in this case would be one under HRS § 710–1023(1)(b).

### VIII.

 Finally, Defendant argues that HRS § 710–1022 violates his constitutional right against cruel and unusual punishment. Defendant contends HRS § 710–1022 is unconstitutional because it "punishes a defendant addicted to drugs and alcohol and who was convicted of the in-prison possession of marijuana as a Class B felon without making provision for the effective rehabilitation of said defendant's underlying disease." He next maintains that HRS § 710–1022 is unconstitutional because the possibility of a ten-year prison term does not bear a reasonable relationship to the seriousness of the underlying offense.

However, Defendant was sentenced to five years' probation, not a ten-year prison term, and at Defendant's own request was required to attend a drug treatment program. Under these circumstances, we need not address his contentions regarding drug rehabilitation or the possibility of ten years' incarceration as a Class B felon. In any event, our decision requires Defendant to be resentenced.

### IX.

Accordingly, we vacate the court's November 17, 1998 Judgment of conviction and sentence, and remand this case to the court with instructions to enter a judgment of conviction as to the lesser included offense of promoting prison contraband under HRS § 710–1023(1)(b) and to sentence Defendant thereunder.