**Electronically Filed
Supreme Court
SCWC-15-0000865
29-OCT-2018
08:24 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellant,
vs.
MATTHEW SEAN SASAI, Petitioner/Defendant-Appellee,
(CAAP-15-0000865; CASE NO. 1DCW-14-0004628)

AND

STATE OF HAWAI'I, Respondent/Plaintiff-Appellant/Cross-Appellee,
vs.
BRENT N. TANAKA, Petitioner/Defendant-Appellee/Cross-Appellant
(CAAP-15-0000866; CASE NO. 1DCW-14-0005843).

_____

SCWC-15-0000865

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000865)

OCTOBER 29, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

In this consolidated appeal, Matthew Sean Sasai and Brent

N. Tanaka ("Sasai" and "Tanaka," respectively; collectively,

"Petitioners") assert that their due process and equal

protection rights were violated when they were each charged with one count of Prostitution under Hawaii Revised Statutes ("HRS") § 712-1200(1)(b) (2014). When Petitioners were charged, HRS § 712-1200(1)(b) provided that "[a] person commits the offense of prostitution if the person . . . [p]ays, agrees to pay, or offers to pay a fee to another to engage in sexual conduct," and HRS § 712-1200(1)(a) provided that "[a] person commits the offense of prostitution if the person . . . [e]ngages in, or agrees or offers to engage in, sexual conduct with another person for a fee[.]" In their motions to dismiss, Petitioners argued that HRS §§ 712-1200(1)(a) and (1)(b) prohibited the same conduct, but subsection (1)(b) carried a harsher penalty because it made them ineligible for a deferred acceptance of a guilty or no contest plea ("DAG/DANC plea") under HRS § 853-4(a)(13)(V) (2014). They argued that pursuant to State v. Modica, 58 Haw. 249, 567 P.2d 420 (1977), where two crimes prohibit the same conduct, it would violate their due process and equal protection rights to convict them of the crime carrying the harsher penalty. The District Court of the First Circuit ("district court")[1] agreed and entered its Findings of Fact, Conclusions of Law, and Order ("FOF/COL and Order") on October 6, 2015,

---

[1]     The Honorable James H. Ashford presiding.

2

granting Petitioners' motions to dismiss based on <u>Modica</u> and dismissing the charges with prejudice.

On appeal, a majority of the Intermediate Court of Appeals ("ICA") vacated the district court's rulings in a Summary Disposition Order ("SDO"), determining that HRS § 712-1200(1)(a) applied only to sellers of sexual conduct while subsection (1)(b) pertained only to purchasers. The ICA majority concluded that subsections (1)(a) and (1)(b) therefore prohibited different conduct, and that the district court erred in finding a <u>Modica</u> violation. Judge Ginoza[2] dissented, agreeing with the district court that a person charged under HRS § 712-1200(1)(b) could be charged under HRS § 712-1200(1)(a), and that subsection (1)(b) carried a harsher penalty by virtue of ineligibility for a DAG/DANC plea.

On certiorari, Petitioners assert the ICA majority erred in vacating the district court's order granting dismissal. We agree, and we therefore vacate the ICA's SDO and Judgment on Appeal. Because the district court did not provide reasons for its dismissal with prejudice, however, we remand these cases to the district court for further proceedings consistent with this opinion.

---

[2] Judge Ginoza became Chief Judge effective April 24, 2018.

## II.  Background

### A.  District Court Proceedings

On September 10, 2014, Sasai was charged with one count of Prostitution, in violation of HRS § 712-1200(1)(b).[3]  Tanaka was charged with the same offense on December 18, 2014.[4]

### 1.  Petitioners' Motions to Dismiss

On May 15, 2015, Tanaka filed his Motion to Dismiss for Violation of Defendant's Right to Due Process and Equal Protection of the Laws ("Tanaka Combined Motion").  On June 9, 2015, Sasai filed his Motion to Dismiss for Violation of Defendant's Right to Due Process and Equal Protection of the Laws ("Sasai Modica Motion").[5]

In their respective motions, Petitioners requested their charges be dismissed, arguing that being charged under HRS § 712-1200(1)(b) violated their due process and equal protection rights under the United States and Hawai'i constitutions because HRS § 712-1200(1)(b) carried a harsher punishment, but contained "the exact same elements" as HRS § 712-1200(1)(a).  They noted that this court, in Modica, ruled that a felony conviction would

---

[3]     This case was 1DCW-14-4628, which became CAAP-15-865.

[4]     This case was 1DCW-14-5843, which became CAAP-15-866.

[5]     Sasai filed his Motion to Dismiss for Violation of Defendant's Right to Equal Protection of the Laws ("Sasai Equal Protection Motion").  That motion, as well as part of the Tanaka Combined Motion, made an equal protection argument based on alleged discriminatory enforcement of the prostitution statute.  Petitioners have not pursued that argument on certiorari.

4

violate the defendant's rights to due process and the equal protection of the laws "where the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor, under either of two statutory provisions, and the elements of proof essential to either conviction are exactly the same[.]" 58 Haw. at 251, 567 P.2d at 422 (citations omitted). Petitioners argued "the Modica rule applies to any situation where the elements of two different crimes regardless of their classification are the same, but the statutory penalties are different."

Petitioners urged the district court to analyze "the elements of the charges based on the particular facts of the case[,]" as this court had done in State v. Hoang, 86 Hawai'i 48, 947 P.2d 360 (1997), and the ICA had done in State v. Hatori, 92 Hawai'i 217, 990 P.2d 115 (App. 1999). They contended that both HRS §§ 712-1200(1)(a) and (1)(b) required "the 'same act' of entering into an agreement for sexual conduct for a fee, which implicitly involves agreement for payment," and therefore that act was punishable "under either HRS § 712-1200(1)(a) and HRS § 712-1200(1)(b) 'precisely because the elements of proof essential to either conviction are exactly the same.'" This conclusion was supported, Petitioners contended, by the legislative history of HRS § 712-1200.

At the time Petitioners were charged, both HRS § 712-1200(1)(a) and (1)(b) were petty misdemeanors punishable by a mandatory $500 fine and up to thirty days in jail, but convictions under subsection (1)(b) were not eligible for deferred acceptance of guilty or no contest plea under HRS § 853-4(13)(V) (2014). Because the punishment for subsection (1)(b) was more severe, that is, violators of subsection (1)(a) could seek a deferred plea but violators of (1)(b) could not, Petitioners asserted that their respective charges should be dismissed as a violation of their due process and equal protection rights under Modica.

In its memoranda in opposition to Petitioners' respective motions, the State submitted, based on its interpretation of HRS § 712-1200, that subsection (1)(a) should be read to apply only to "those persons offering sex for a fee," whereas subsection (1)(b) should be read to apply to "those persons who offer a fee for sex. . . ." The State urged the district court to read the statute this way "to give proper meaning to all portions of § 712-1200," and avoid rendering subsection (1)(b) a "nullity." Further, the State argued the legislative history of the statute made clear that subsection (1)(b) was intended to apply to the patrons of prostitutes.

The State contended that HRS §§ 712-1200(1)(a) and (1)(b) did not have the same elements and did not prohibit the same act

because "subsection (1)(a) applies to those who offer sex for money, whereas subsection (1)(b) applies to those [who] offer money for sex." The State asserted "[t]he acts . . . reside on opposite sides of the transaction or agreement and cannot, therefore, be the same act." Additionally, the State argued the statutory penalties for violating subsections (1)(a) and (1)(b) were the same, and asserted that a deferral is a "non-penalty" because "[w]hether or not a deferral is an option is not the punishment itself but is a delayed dismissal given certain conditions."

## 2. District Court's FOF/COL and Order

The district court held a two-day consolidated hearing on the motions to dismiss. Petitioners called three witnesses and the district court accepted several stipulations.[6] On July 21, 2015, the district court granted the Petitioners' motions, based on Modica, and dismissed their respective charges with prejudice.[7]

On October 6, 2015, the district court filed its written

---

[6] Petitioners called two Honolulu Police Department ("HPD") officers and one former prosecutor to testify to the State and HPD's enforcement practices with respect to HRS §§ 712-1200(1)(a) and (1)(b). The majority of that testimony relates to the equal protection argument not before this court.

[7] The district court took Petitioners' discriminatory enforcement argument under advisement, and later denied their motions with respect to that argument.

FOF/COL and Order.[8] Based on the testimony of former Deputy Prosecuting Attorney Klemen Urbanc ("Urbanc"), the district court found that before the 2011 amendment to HRS § 712-1200(1), "both [purchasers and sellers of sexual conduct] were prosecuted under the same provision - HRS § 712-1200(1); the subdivisions in what would later become HRS §§ 712-1200(1)(a) and (1)(b) did not exist yet. The language in HRS § 712-1200 did not prohibit Urbanc from prosecuting any [purchasers of sexual conduct] charged with prostitution." Factual stipulations, entered into by the parties and the district court on June 26, 2015, further explained how HRS § 712-1200 changed over time:

> 1. Prior to 1990, HRS § 712-1200(1) provided: "A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee."
>
> 2. In 1990, HRS § 712-1200(1) was amended to delete the phrase "in return" such that HRS § 712-1200(1) then read: "A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee."
>
> 3. The language of HRS § 712-1200 remained the same from 1990 until July 1, 2012.[9]
>
> 4. Effective April 25, 2013, HRS [§] 853-4 excludes persons charged under HRS § 712-1200(1)(b) from being able to move for a deferred acceptance of a no contest or guilty plea.
>
> 5. Conference Committee Report No. 76 provides that one of the purposes of House Bill No. 240 [(the 2011 amendment to

---

[8]   Specifically, the district court's Order (1) granted Sasai's Modica Motion; (2) denied Sasai's Equal Protection Motion; and (3) granted in part and denied in part Tanaka's Combined Motion.

[9]   House Bill No. 240, which amended HRS § 712-1200 to include the language at issue in this case, actually became effective July 1, 2011. H.B. 240, S.D. 1, C.D. 1, 26th Leg., Reg. Sess. (2011).

> HRS § 712-1200)] was to "[e]xtend the offenses of prostitution and solicitation of prostitution to reach those who pay, agree to pay, or offer to pay a fee to another person to engage in sexual conduct."
>
> . . . .

The district court concluded that only a purchaser of sexual conduct "can properly be charged under HRS § 712—1200(1)(b)" but that "all persons charged with prostitution—whether [purchasers of sexual conduct] or [sellers of sexual conduct]—can properly be charged under HRS § 712-1200(1)(a)." This conclusion was "evident from the plain language of HRS § 712-1200(1)(a)," the district court held, "as both (i) a prospective or actual buyer of sex, and (ii) a prospective or actual seller of sex, can be said to engage in, agree to engage in, or offer to engage in sexual conduct with another person for a fee (as required by HRS § 712-1200(1)(a))." The enforcement history of the statute also supported this conclusion, because "[f]or many years, the State prosecuted both [purchasers and sellers of sexual conduct] under an identical statute (HRS § 712-1200(1))," and the fact that "the State prosecuted [sellers and purchasers of sexual conduct] alike under a statute substantively identical to the current HRS § 712-1200(1)(a) is further evidence to support the conclusion that all persons now charged with prostitution . . . can properly be charged under HRS § 712-1200(1)(a)."

The district court rejected the State's argument "that the Court's interpretation of HRS § 712-1200(1)(a) would render HRS § 712-1200(1)(b) a nullity," relying on its plain language interpretation of the statute:

> 10. . . . HRS § 712-1200(1)(b) properly can be used to charge [purchasers of sexual conduct], at least insofar as charging a [purchaser of sexual conduct] with prostitution would comport with the plain language of the statute. Therefore, the Court's interpretation of HRS § 712-1200(1)(a) does not render HRS § 712-1200(1)(b) a nullity. The Court does, however, find that HRS § 712-1200 (1)(b) is superfluous. However, neither HRS § 712-1200(1)(a) nor HRS § 712-1200(1)(b) are ambiguous. Although the Hawai[']i Legislature may have adopted a superfluous statute, the Court cannot ignore the plain language of HRS § 712-1200(1)(a); and it cannot ignore the legislative history of HRS § 712-1200, or the history of enforcement of the prostitution statute. Therefore, the Court cannot accept the State's argument on this point.
>
> 11.  In all cases that were brought under HRS § 712-1200(1), and are or can be brought under HRS § 712-1200(1)(a), the fundamental bargain is identical: the accused offers to engage in sex (or agrees to engage in sex or does, in fact, engage in sex) with another person in exchange for a fee. This bargain is the same for both parties involved, as they both agree to engage in sex for a fee. Thus, the conduct is the same—engaging in sex for a fee—regardless of whether the involved party is a [seller of sexual conduct] or a [purchaser of sexual conduct].

Because a person charged under HRS § 712-1200(1)(b) is prohibited from seeking a deferral of a guilty or no contest plea under HRS § 853-4(a)(13)(V), the district court concluded that "in practical effect, a person charged under HRS § 712-1200(1)(b) is exposed to the possibility of a far harsher result than a person charged under HRS § 712-1200(1)(a)."  That "harsher result" included a guaranteed fine, a potential jail

10

sentence, and the inability to seek "deferral, dismissal and expungement[.]"

The district court recognized that under Modica, "if a violation of a misdemeanor statute would invariably and necessarily also constitute a violation of a felony statute, then it is a violation of equal protection and due process to proceed against a defendant under the felony statute." Additionally, it noted a felony conviction is a due process and equal protection violation "when the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor[.]"  Because Modica applied to differently classed felonies in State v. Arceo, 84 Hawai'i 1, 928 P.2d 843 (1996), the district court concluded it should logically apply "to differentially classed petty misdemeanors, such as charges under HRS §[§] 712-1200(1)(a) and (1)(b)."

Finally, the district court concluded that the conduct prohibited by HRS §§ 712-1200(1)(a) and (1)(b) was the same, and "[t]herefore, the result should be the same, but it is not—due to HRS § 853-4(a)(13)(V), which essentially discriminates against defendants charged under HRS § 712-1200(1)(b)."  The district court further concluded that because "[t]he guiding principle of Modica is that if the same conduct can be charged more harshly under one statute than another," it would be a violation of the due process and equal protection clauses for

11

the State to prosecute Petitioners under the "statute which yields a harsher penalty." The district court summarily dismissed the charges against Sasai and Tanaka with prejudice.

The district court's Judgment and Notice was entered on October 10, 2015. The State appealed and Tanaka cross-appealed.[10]

**B. ICA Proceedings**

On the State's motion, Petitioners' cases were consolidated under CAAP-15-865.

In its opening brief, the State raised three points of error related to the Petitioners' Modica motions. First, the State challenged COLs 5 through 12, in which the district court interpreted the language of HRS §§ 712-1200(1)(a) and (1)(b) as prohibiting the same conduct. The State reasserted its argument that subsection (1)(a) applies solely to sellers of sexual conduct because subsection (1)(b) applies solely to purchasers. Second, the State disputed COLs 17 through 19, which analyzed HRS §§ 712-1200(1)(b) and 853-4, asserting that even if HRS § 712-1200(1)(b) was subject to a harsher penalty, Modica did not apply to the Petitioners' cases because "the elements of the two subsections are not the same." Third, the State noted that

---

[10] Tanaka's cross appeal argued the Petitioners' discriminatory enforcement argument, and challenged errors in the FOF that Tanaka ultimately conceded did not "significantly affect the district court's ruling denying Tanaka's motion in part (or granting Tanaka's motion in part)."

12

Petitioners conceded the State could refile the charges under HRS § 712-1200(1)(a) if the charges under subsection (1)(b) were dismissed without prejudice.

The State asserted the district court's interpretation of HRS §§ 712-1200(1)(a) and (1)(b), in addition to rendering subsection (1)(b) "superfluous," also rendered HRS § 853-4(a)(13)(V) void. The State opined that if the legislature thought HRS § 712-1200(1)(a) applied to purchasers of sexual conduct as well as sellers, "it could and it would have amended the language . . . so that it would have been even clearer that HRS § 712-1200(1)(a) is not a proper charge for those who buy sex."

Petitioners argued their alleged conduct would be a violation of HRS § 712-1200(1)(a) that necessarily constituted a violation of HRS § 712-1200(1)(b). They explained that in Hoang, this court looked to the elements of the statutes, language of the charging document, and the specific facts of the case to determine whether a Modica violation had occurred. 86 Hawai'i at 58, 947 P.2d at 370. Petitioners noted that in Hatori, the ICA performed a similar analysis to conclude that, as applied to the facts of that case, charging under a higher-grade felony statute was a Modica violation. 92 Hawai'i at 227, 990 P.2d at 125. Based on these cases, Petitioners asserted the

13

State was required to prove the same facts under HRS §§ 712-1200(1)(a) and (1)(b):

> Under either of the two statutory provisions, the State essentially must establish the following: a defendant intentionally or knowingly entered into agreement with another person; the first term of the agreement is to engage in sexual conduct; and the second term of the agreement is payment of a fee. Thus, the act of "agreeing to engage in sexual conduct with another person for a fee," which is required for a conviction for HRS § 712-1200(1)(a) is identical to the act of "agreeing to pay a fee to another to engage in sexual conduct", which is required for the [sic] a conviction under HRS § 712-1200(1)(b). Clearly, the harm, which the Modica rule seeks to prevent, is perpetuated when the State is allowed to exercise unguided discretion in choosing to charge a person under subsection (1)(b) instead of (1)(a) when the elements of proof under [sic] offense are identical.

Petitioners asserted subsections (1)(a) and (1)(b) provided no limitations or guidance for their application, leaving the State with unbridled discretion in choosing which defendants to charge under which subsection. Although Petitioners conceded that the legislature intended to render persons charged under HRS § 712-1200(1)(b) ineligible for deferral, they contended the legislature's intent with respect to either HRS § 712-1200(1)(b) or HRS § 853-4 was irrelevant to application of the Modica rule.

In reply, the State argued that a subsequent amendment to HRS § 712-1200(1)(a) in 2016 "confirmed" the legislature's original intent was that HRS § 712-1200(1)(a) should apply to sellers of sexual conduct and HRS § 712-1200(1)(b) should apply to purchasers of sexual conduct. Specifically, the legislature distinguished subsection (1)(a) from subsection (1)(b) by adding

14

the phrase "in return," so that subsection (1)(a) was violated when a person engaged in sexual conduct "in return for a fee."[11]

In its SDO, the ICA vacated the district court's order insofar as it granted the Petitioners' motions based on Modica. State v. Sasai, No. CAAP-15-865, State v. Tanaka, No. CAAP-15-866 (App. Jun. 30, 2017) (SDO) at 2. While it concluded that the district court's reading of HRS § 712-1200(1)(b) was correct, and that subsection applied only to purchasers of sexual conduct, the ICA held that the district court erred in determining that subsection (1)(b) was superfluous. Sasai, SDO at 4. In order to "harmonize" subsections (1)(a) and (1)(b), and give effect to them both, the ICA concluded that if subsection (1)(b) applied to the purchasers of sexual conduct, then subsection (1)(a) was meant to apply to the sellers of sexual conduct. Sasai, SDO at 4-5. The ICA looked to the legislative history of HRS § 712-1200(1)(b), as well as the subsequent amendment to HRS § 712-1200(1)(a), to confirm its interpretation of the statute. Sasai, SDO at 5.

Having determined that subsections (1)(a) and (1)(b) prohibited different conduct, the ICA reasoned that the subsections therefore contained different "essential elements

---

[11] When the State filed its Reply Brief on June 2, 2016, it noted that the amendment "was awaiting the Governor's signature to go into effect." The amendment became effective on July 1, 2016. HRS § 712-1200 (2016).

15

for each offense and can be punished differently." Sasai, SDO at 6. The ICA held that the Modica rule did not apply to Petitioners' cases and the district court erred in granting their motions to dismiss. Id.

Judge Ginoza dissented. Sasai, SDO at 12 (Ginoza, J., dissenting). In her view, the history and plain language of HRS §§ 712-1200(1)(a) and (1)(b) made clear that a person "who pays/agrees to pay/offers to pay a fee to another to engage in sexual conduct" could be charged under either subsection, and that "the prohibited conduct was the same under both subsections." Sasai, SDO at 13 (Ginoza, J., dissenting). "In short," she explained, "for such person, the elements of proof for conviction under either subsection (1)(a) or (1)(b) were the same, and a violation of subsection (1)(a) would invariably and necessarily constitute a violation of subsection (1)(b)." Sasai, SDO at 13-14 (Ginoza, J., dissenting).

Judge Ginoza noted that although Modica addressed a felony and a misdemeanor offense, this court has applied the Modica rule to different grades of felonies in Arceo, and the ICA did so in Hatori. Sasai, SDO at 14 (Ginoza, J., dissenting). She opined that Modica applied to Petitioners' cases, where both subsection (1)(a) and subsection (1)(b) were petty misdemeanors but "the penalty under subsection (1)(b) is more severe in that a DAG is precluded under HRS § 853-4(a)(13)(V)." Id. In sum,

16

Judge Ginoza would have affirmed the district court's dismissal of Petitioners' charges.  Id.

## C.    Application for Writ of Certiorari

Petitioners raise a single question in their Application: "Whether the ICA majority gravely erred in holding that the trial court erred in dismissing the charges due to violations of Petitioners' Due Process and Equal Protection rights pursuant to State v. Modica, 58 Haw. 249, 567 P.2d 4[2]0 (1977)."  They make three arguments:  first, the ICA majority incorrectly interpreted HRS § 712-1200(1)(a) by relying on dictionary definitions; second, the subsequent legislative history of HRS § 712-1200(1)(a) did not support the majority's position; and third, the majority judicially revised the statute, which was improper.

Petitioners assert that, based on the ICA's definition of "engage" as "to do or take part in something," a person can be either the fee payer or fee recipient and commit prostitution under HRS § 712-1200(1)(a).  They contend that the "essence" of the offense of prostitution "is that the parties enter into an agreement or contract for sexual conduct for a fee."  Because the statute contained no limitation to reduce the scope of subsection (1)(a) to the sellers of sexual conduct, Petitioners argue the plain language of HRS § 712-1200(1)(a) prohibited both the buying and selling of sexual conduct.

As to the ICA majority's use of subsequent legislative history, Petitioners assert that subsequent legislative history "should be viewed with extreme caution," citing precedent by this court and persuasive authority from the United States Supreme Court. Petitioners contend that, instead, the actual legislative history of HRS § 712-1200(1)(a) is relevant, and its 1990 amendment made clear that the language of HRS § 712-1200(1) was meant to apply to both sellers of sexual conduct and purchasers. They assert the 2011 amendment splitting HRS § 712-1200(1) into subsections (1)(a) and (1)(b) was intended to prohibit the purchasing of sexual conduct. Based on committee reports, Petitioners maintain, however, that the legislature enacted the 2011 amendment because it was mistaken about the effect of its 1990 amendment, which already prohibited that behavior.

Petitioners argue that the 2016 amendment to HRS § 712-1200(1)(a) was a substantive change to the law, not a "clarification" of its language, because the statute was already clear and unambiguous. Ultimately, they argue, the legislature's 2016 "clarification" of HRS § 712-1200(1)(a) to "distinguish" it from subsection (1)(b) was indicative of the fact that, previously, there was no distinction between the sections, and purchasers of sexual conduct could have been charged under either subsection (1)(a) or (1)(b).

18

Finally, Petitioners assert the ICA majority's interpretation of HRS § 712-1200(1)(a) was an improper judicial revision of the statute. They argue the ICA majority's interpretation of the word "engage" improperly limited the application of subsection (1)(a) to the sellers of sexual conduct, which did not comport with the plain and unambiguous language of the statute. Furthermore, Petitioners opine that the district court's interpretation of subsection (1)(a) does not render subsection (1)(b) superfluous. Rather, in their view, it would mean that defendants charged under subsection (1)(b) between April 25, 2013 and July 1, 2016, would have a Modica challenge, as long as they were otherwise eligible for a deferral.

## II. Standards of Review

### A. Questions of Law

Questions of law are reviewable de novo under the right/wrong standard of review. State v. Jess, 117 Hawai'i 381, 391, 184 P.3d 133, 143 (2008).

### B. Statutory Construction

This court's construction of statutes is guided by the following rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to

19

ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (quoting Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cty. of Honolulu, 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007)).

### III. Discussion

### A.    Evolution of HRS § 712-1200

Before its amendment in 1990, HRS § 712-1200 provided:  "A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee."  HRS § 712-1200(1) (1986) (emphasis added).  In 1990, the phrase "in return" was removed, so that HRS § 712-1200(1) provided:  "A person commits the offense of prostitution if the person engages in, or agrees or offers to engage in, sexual conduct with another person for a fee."  1990 Haw. Sess. Laws Act 204, § 1 at 442.  As recounted by the ICA in State v. Espinosa, 120 Hawai'i 478, 210 P.3d 1 (App. 2009), "both the Senate and House Judiciary committees noted . . . that the purpose of . . . amend[ing] HRS § 712–1200 [was] 'to make it clear that the customer of a prostitute is also guilty of the offense of prostitution[.]'"  120 Hawai'i at 480, 201 P.3d at 3 (citing S. Stand. Comm. Rep. No. 325, in 1989

20

Senate Journal, at 946; H. Stand. Comm. Rep. No. 1205-90, in 1990 House Journal, at 1316).

In 2011, the legislature further amended HRS § 712-1200(1), splitting it into the two subsections at issue in this case. H.B. 240, S.D. 1, C.D. 1, 26th Leg., Reg. Sess. (2011). Although the 1990 amendment already rendered HRS § 712-1200(1) applicable to the purchasers of sexual conduct, Espinosa, 121 Hawai'i at 480, 210 P.3d at 3, the legislature's 2011 amendment intended to "[e]xtend the offense[] of prostitution . . . to reach those who pay, agree to pay, or offer to pay a fee to another person to engage in sexual conduct[.]" Conf. Comm. Rep. No. 76 on H.B. No. 240 in 2011 House Journal, at 1630, 2011 Senate Journal, at 732. The Senate Standing Committee Report specifically states the amendment was intended "to address the concerns raised from the case State v. Espinoza[sic][.]" S. Stand. Comm. Rep. No. 1137, in 2011 Senate Journal, at 1285.

Whether or not the legislature was mistaken as to the effect of the 1990 amendment, the 2011 amendment retained the language of HRS § 712-1200(1) (Supp. 1990) when it created HRS § 712-1200(1)(a) (Supp. 2011), which provided: "A person commits the offense of prostitution if the person . . . [e]ngages in, or agrees or offers to engage in, sexual conduct with another person for a fee[.]" HRS § 712-1200(1)(a) (Supp. 2011). In contrast, the newly created subsection (1)(b) contained new

21

language:  "A person commits the offense of prostitution if the person . . . [p]ays, agrees to pay, or offers to pay a fee to another to engage in sexual conduct."  HRS § 712-1200(1)(b) (Supp. 2011).

Effective July 1, 2016, HRS § 712-1200(1)(a) now provides: "A person commits the offense of prostitution if the person . . . [e]ngages in, or agrees or offers to engage in, sexual conduct with another person in return for a fee[.]"  H.B. 2561, 28th Leg., Reg. Sess. (2016) (emphasis in original).  This amendment was intended to "clarify" HRS § 712-1200(1)(a), "distinguishing the offense from the offense under section 712-1200(1) . . . in which the other person pays the fee[.]"  Id.  This case, however, is governed by the previous version of the statute.

B.    The Modica Rule

In Modica, this court held that a defendant's rights to due process of law and equal protection of the laws would be violated when "a violation of [a] misdemeanor statute . . . would invariably and necessarily constitute a violation of the felony provision."  58 Haw. at 250, 567 P.2d at 421 (citations omitted).  A defendant may not be convicted of an offense that carries a harsher penalty than another offense containing the same elements:

> [W]here the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor, under either of two statutory provisions, and the elements of proof essential to either conviction are exactly the same,

22

> a conviction under the felony statute would constitute a
> violation of the defendant's rights to due process and the
> equal protection of the laws.

58 Haw. at 251, 567 P.2d at 422 (citations omitted).  However,
where the defendant's conduct violates either of two statutes,
but the defendant is charged or convicted of the offense that
carries the lesser punishment, there is no Modica violation.
See Hoang, 86 Hawaiʻi at 59, 947 P.2d at 371 (holding that
because the defendant was charged with the misdemeanor offense,
he could not be convicted of the felony, and therefore "was not
threatened with unbridled, capricious, and prejudicial
prosecutorial discretion.").

Although "[s]tatutes may on occasion overlap, depending on
the facts of a particular case, . . . it is generally no defense
to an indictment" that the defendant could have been charged
under another statute.  Modica, 58 Haw. at 251, 567 P.2d at 422.
Rather, when statutes overlap, "the matter is necessarily and
traditionally subject to the prosecuting attorney's discretion."
58 Haw. at 251, 567 P.2d at 422.  Overlapping statutes raise
constitutional concerns when, lacking legislative guidance,
prosecutors are left with unbridled discretion to charge
defendants with a more severe offense.  58 Haw. at 251, 567 P.2d
at 422 (citing State v. Pirkey, 281 P.2d 698, 703 (Or.
1955)(overruled on different grounds by City of Klamath Falls v.
Winters, 619 P.2d 217 (Or. 1980)) (holding it was

unconstitutional "to vest in a grand jury or magistrate the unguided and untrammeled discretion to determine whether a defendant shall be charged with a felony or a misdemeanor[.]"); Olsen v. Delmore, 295 P.2d 324, 327 (Wash. 1956) (citing Pirkey for the proposition that the statute at issue "lodged . . . discretion with prosecuting officials" and was therefore unconstitutional)).[12]

Unbridled prosecutorial discretion has remained a chief concern in this court's application of the Modica rule.  In Arceo, the defendant was charged with one count of sexual assault in the first degree, in violation of HRS § 707-

---

[12]    In United States v. Batchelder, 442 U.S. 114 (1979), the United States Supreme Court held that it was not unconstitutional for two statutes with different penalties to prohibit identical conduct, as long as the government "does not discriminate against any class of defendants."  442 U.S. at 124-25. The Court held that a prosecutor's decision to charge under one statute or the other is never "unfettered" because "[s]electivity in the enforcement of criminal laws is, of course, subject to constitutional constraints."  442 U.S. at 125-26.  In effect, Batchelder overruled Pirkey and Olsen insofar as they held that it was unconstitutional under the equal protection clauses of the federal constitution to grant such discretion to charging officials.
    Some states have adopted the Batchelder analysis. See City of Klamath Falls v. Winters, 619 P.2d 217 (Or. 1980) (recognizing that Batchelder overruled Pirkey); see generally State v. Rooney, 19 A.3d 92 (Vt. 2011); State v. Williams, 175 P.3d 1029 (Utah 2007); Johnson v. State, 61 P.3d 1234 (Wyo. 2003).
    Some states have declined to follow Batchelder on state law grounds. See generally State v. Thompson, 200 P.3d 22 (Kan. 2009); People v. Sharpe, 839 N.E.2d 492 (Ill. 2005); People v. Estrada, 601 P.2d 619 (Colo. 1979).
    This court has continued to embrace the Modica rule.  See Arceo, 84 Hawai'i 1, 928 P.2d 843 (applying the Modica rule in 1996, after Batchelder was announced).  We decline to adopt Batchelder.  Our state constitution may afford our citizens broader protections than the federal constitution. Arceo, 84 Hawai'i at 28, 928 P.2d at 870 (quoting State v. Wallace, 80 Hawai'i 382, 397 n.14, 910 P.2d 695, 710 n.14 (1996)); State v. Hoey, 77 Hawai'i 17, 36, 881 P.2d 504, 523 (1994)).  As our cases after Batchelder could not have been based on the federal constitution, they were based on the due process and equal protection clauses of Article I, Section 5 of the Constitution of the State of Hawai'i.

730(1)(b)(1993), and one count of sexual assault in the third degree, in violation of HRS § 707-732(1)(b)(1993). 84 Hawai'i at 2-3, 928 P.2d at 844-45. The State argued those offenses could be charged as continuing offenses. 84 Hawai'i at 4, 928 P.2d at 846. This court disagreed, holding instead that each act in violation of those statutes was a separate offense. 84 Hawai'i at 21, 928 P.2d at 863. To hold otherwise, we concluded, would have meant that "the same acts committed under the same circumstances could, by virtue of the prosecution's charging option or whim, be punishable either as a single offense or as multiple offenses, even though the elements of proof essential to either result would be exactly the same." 84 Hawai'i at 22, 928 P.2d at 864.

Although Modica analyzed a misdemeanor and a felony statute, this court applied the Modica rule to two differently classed felonies in Arceo. 84 Hawai'i at 22, 928 P.2d at 864. As the focus of the Modica rule is curbing unbridled prosecutorial discretion when identical conduct could constitute crimes carrying punishments of differing severity, the Modica rule can apply to offenses with the same or different statutory classes. Thus, as in the present case, the Modica rule can apply—if its requirements are otherwise met—to two petty misdemeanors.

25

In sum, the Modica rule requires the court to answer three questions:  (1) whether defendant's alleged conduct is punishable under either of two statutory provisions; (2) whether the elements of proof essential to conviction under the statutes are exactly the same; and, (3) whether the punishment for the offense with which the defendant was charged or convicted is greater than the punishment for the alternative offense.  58 Haw. at 250-51, 567 P.2d at 421-22.

C.    **Petitioners' Charges Violated the Modica Rule**

   1.    **Petitioners' conduct was punishable under either HRS §§ 712-1200(1)(a) or (1)(b)**

The threshold question of the Modica inquiry is whether the defendant's alleged conduct is punishable under either of two statutory provisions.  58 Haw. at 251, 567 P.2d at 422.  This court's analysis must begin with the plain language of the statute.  Wheeler, 121 Hawai'i at 390, 219 P.3d at 1177.

When Petitioners were charged, HRS § 712-1200(1)(a) provided that a person who "[e]ngages in, or agrees or offers to engage in, sexual conduct with another person for a fee" committed the offense of prostitution.  HRS § 712-1200(1)(a) (2014).  Subsection (1)(b) provided that one who "[p]ays, agrees to pay, or offers to pay a fee to another to engage in sexual conduct" also commits the offense of prostitution.  HRS § 712-1200(1)(b) (2014).

The ICA reasoned that because subsection (1)(b) was limited to purchasers, subsection (1)(a) must therefore be limited to sellers.  Sasai, SDO at 4-5.  The ICA looked to a 2016 amendment of HRS § 712-1200(1)(a) to "confirm" its interpretation of the pre-2016 text, and sought to "harmonize" subsections (1)(a) and (1)(b) under the guidance of State v. Davis, 63 Haw. 191, 624 P.2d 376 (1981).[13]  Sasai, SDO at 4.  The ICA erred in attempting to "harmonize" the subsections of HRS § 712-1200 "to give effect to them both" because the plain text of each subsection was unambiguous.

Although HRS § 712-1200(2) (2014) defined "sexual conduct" by reference to HRS § 707-700 (2014), neither of those sections defined the terms "engages in" or "pays."  As the ICA noted, courts may look to "legal or other well accepted dictionaries" to ascertain the "ordinary meaning" of words in a statute. State v. Jing Hua Xiao, 123 Hawai'i 251, 259, 231 P.3d 968, 976 (2010).  To "engage" is "[t]o employ or involve oneself; to take

---

[13] Davis stated:

> Statutes should be interpreted according to the intent and meaning, and not always according to the letter, and every part thereof must be viewed in connection with the whole so as to make all parts harmonize, if practicable, and give a sensible and intelligent effect to each.

Davis, 63 Haw. at 193, 624 P.2d at 380.  Davis stands for the proposition that statutes should be read in pari materia to discern their meaning.  Davis is not relevant to determining whether a defendant's constitutional rights under the Modica rule are implicated by different statutes or different subsections of a statute.

27

part in[.]"[14]  Black's Law Dictionary (10th ed. 2014).  The word "pay" has multiple definitions, but HRS § 712-1200(1)(b) employs it as a verb, and as such "pay" generally connotes a monetary transaction between two or more parties.  See Black's Law Dictionary (10th ed. 2014) (defining "pay" as "1. To give money for a good or service that one buys; to make satisfaction . . . 3. To give (someone) money for the job that he or she does; to compensate a person for his or her occupation[.]")

By use of the phrase "[e]ngages in," subsection (1)(a) made it illegal to "involve oneself" or "to take part in" any "sexual conduct with another person for a fee."  As the district court correctly concluded, this language prohibits conduct on both sides of the prostitution transaction.  The purchasers and sellers of sexual conduct both "take part in" and "involve themselves" with prostitution.  A person who offers sexual conduct for a fee literally "employs" themselves in prostitution, but the purchaser of sexual conduct is no less "engaged" in the transaction.

Thus, because Petitioners' alleged conduct was punishable under either HRS § 712-1200(1)(a) or HRS § 712-1200(1)(b), the first part of the Modica test is satisfied.

---

[14]  The ICA defined "engage" as "to do or take part in something."  Sasai, SDO at 3 (quoting Merriam-Webster, https://www.merriam-webster.com/dictionary/engage (last visited May 1, 2018)).

2.   **The elements of proof essential to conviction under HRS §§ 712-1200(1)(a) and (1)(b) are identical, as applied to purchasers of sexual conduct**

Turning to the second part of the Modica inquiry, a denial of the defendant's constitutional rights occurs "only if a violation of the misdemeanor statute . . . would invariably and necessarily constitute a violation of the felony provision."  58 Haw. at 250, 567 P.2d at 421.  Further, "the elements of proof essential to either conviction" must be "exactly the same."  58 Haw. at 251, 567 P.2d at 422.

As discussed above, all violations of HRS § 712-1200(1)(b) would also be violations of subsection (1)(a), as it existed before July 1, 2016.  Subsection (1)(a), however, contains broader language than subsection (1)(b), such that there are at least two ways to "engage" in prostitution under that subsection:  one may pay, or one may otherwise "engage" by selling sexual conduct.  As a result, violation of subsection (1)(a), the offense with the lesser punishment, is not invariably and necessarily a violation of subsection (1)(b), the offense with the greater punishment, and ordinarily the Modica rule would not be violated.  See State v. Kuuku, 61 Haw. 79, 82, 595 P.2d 291, 294 (1979) (finding no Modica rule violation where there were "any number of ways by which the [misdemeanor] statute may be violated without also violating the [felony] statute."); but see Hatori, 92 Hawai'i at 227, 990 P.2d at 125

29

(finding a Modica violation where the lesser offense prohibited a broader range of conduct, but the conduct at issue would always constitute a violation of both the lesser and greater offenses).

Nonetheless, the 2011 amendment to HRS § 712-1200(1) made possible the existence of "the very evils rendered unlawful by the Modica rule." See Arceo, 84 Hawai'i at 22, 928 P.2d at 864 (identifying due process and equal protection violations in a charging practice subject to "the prosecution's charging option or whim"). The language of HRS § 712-1200(1) (Supp. 1990) applied to both purchasers and sellers of sexual conduct, and that language was used verbatim in HRS § 712-1200(1)(a) (2011). Given that they have identical language, subsection (1)(a) (Supp. 2011) should logically be interpreted the same way that section (1) (Supp. 1990) once was — to apply to both purchasers and sellers of sexual conduct.

As explained in Part III, Section C(1), the plain language of HRS §§ 712-1200(1)(a) and (1)(b) (Supp. 2011) gave prosecutors the ability to charge purchasers under either subsection, at their discretion.[15] The amendment of HRS § 712-

---

[15] At the hearing on the motions to dismiss, a list of defendants charged under HRS § 712-1200(1)(b) and the known dispositions of their cases was admitted into evidence. That list of dispositions indicated that at least four defendants charged under HRS § 712-1200(1)(b) after April 25, 2013, were ultimately granted deferred pleas after the State amended their charges to HRS § 712-1200(1)(a).
(continued. . .)

1200(1) in 2011 created a Modica problem, because it leaves the determination of the defendant's charges and ultimate punishment to be governed by the prosecutor's discretion.  See State v. Lee, 75 Haw. 80, 93, 856 P.2d 1246, 1254 (1993) ("[A] criminal statute is void for vagueness unless it . . . provides explicit standards for those who apply the statute, in order to avoid arbitrary and discriminatory enforcement and the delegation of basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." (internal quotations, brackets, and citation omitted)).

Whether a purchaser is charged under subsection (1)(a) or (1)(b), the State must prove that the purchaser "engaged" themselves in prostitution by paying, agreeing to pay, or offering to pay another person to engage in sexual conduct.  As applied to the purchasers of sexual conduct, subsections (1)(a) and (1)(b) prohibit the same conduct but prescribe different punishment.  Because elements of proof essential to conviction under HRS §§ 712-1200(1)(a) and (1)(b) are the same, as applied to purchasers of sexual conduct, the second part of the Modica

_____

(. . . continued)
        While the factual bases for these charges are not present in the record, the fact that such amendments were possible supports our conclusion that prosecutorial discretion, not the text of the statute or intent of the legislature, determined whether defendants were prosecuted under HRS § 712-1200(1)(b) instead of HRS § 712-1200(1)(a).

test is met.[16]  Our holding is also consistent with the ICA's holding in Hatori that a Modica violation exists where the lesser felony prohibited a broader range of conduct, but the conduct at issue would always constitute a violation of both the lesser and greater felonies.  Hatori, 92 Hawai'i at 227, 990 P.2d at 125.

### 3. The punishment for HRS § 712-1200(1)(b) is greater than the punishment for HRS § 712-1200(1)(a)

The final question in the Modica inquiry is whether the punishment for the offense with which the defendant was charged is greater than the punishment for the alternative offense.  58 Haw. at 251, 567 P.2d at 420.

Prostitution, under either subsection of HRS § 712-1200(1), is a petty misdemeanor.  HRS § 712-1200(3) (2014).  First time offenders face a mandatory fine of no less than $500 but no more than $1000, with the possibility of up to thirty days of imprisonment, unless the court has granted a deferred plea under HRS Chapter 853.  HRS § 712-1200(4)(a) (2014); HRS § 853-1(c) (2014).  Granting a DAG/DANC plea is discretionary.  HRS § 853-1(a).  Under HRS § 853-4(a)(13)(V) (2014), the deferral statute is not applicable if the offense charged is a violation of HRS § 712-1200(1)(b).

---

[16]    We emphasize that this "as applied" analysis is appropriate because the amendment history of HRS § 712-1200(1) created uncertainty in the application of previously understood language, which in turn significantly undermined the legislative guidance provided by the text of the statute.

Ineligibility for a DAG/DANC plea means that all defendants charged under HRS § 712-1200(1)(b) are subject to the aforementioned penalties for the crime of prostitution. Without more specific guiding language in subsection (1)(a), it is the prosecutor's charging decision that ultimately determines whether a defendant is charged under subsection (1)(a) or (1)(b), and can attempt to seek deferral, or must face the ordinary statutory penalty. Because the ability of first-time offenders to seek a DAG/DANC has significant effect on their potential punishment, HRS § 712-1200(1)(b) carries a harsher punishment than subsection (1)(a), and the third part of the Modica test is satisfied.

Based on the plain language of HRS §§ 712-1200(1)(a) and (1)(b), as they existed at the time Petitioners were charged, we conclude that Petitioners' charges violated the Modica rule.[17] The ICA erred in holding that Petitioners' due process and equal protection rights had not been violated.

**D.   Dismissal With Prejudice**

Citing State v. Estencion, 63 Haw. 264, 625 P.2d 1040

---

[17]   The potential for the Modica violation challenged by Petitioners was created when HRS § 712-1200(1)(b) was excluded from the DAG/DANC statute on April 25, 2013. See S.B. 194, 27th Leg., Reg. Sess. (2013) (amending HRS § 853-4, effective April 25, 2013).

The 2016 amendment to HRS § 712-1200(1)(a) added the phrase "in return" to subsection (1)(a) to further distinguish it from subsection (1)(b). H.B. 2561, 28th Leg., Reg. Sess. (2016). Only defendants who were otherwise eligible for a DAG/DANC plea and were convicted under HRS § 712-1200(1)(b) between April 25, 2013 and July 1, 2016 may be affected by the issue Petitioners present here.

(1981), the State asserted before the ICA that the district court erred in dismissing the charges with prejudice, without engaging in "any on the record balancing of the factors necessary to determine whether dismissal should be with or without prejudice."

The Estencion factors must be analyzed when dismissing a case for violation of Hawai'i Rules of Penal Procedure ("HRPP") Rule 48. In Estencion, we adopted factors listed in the Federal Speedy Trial Act § 101, 18 U.S.C. § 3162(a)(1) (Supp. 1980), to determine whether a charge should be dismissed with or without prejudice for a HRPP Rule 48 violation, stating:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and the circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

63 Haw. at 269, 625 P.2d at 1044 (quoting 18 U.S.C. § 3162(a)(1) (Supp. 1980)).

We have yet to set out factors for a trial court to consider to determine whether a criminal charge should be dismissed before conviction with or without prejudice based on a Modica violation. In general, trial courts have the inherent power to dismiss a charge, and although the exercise of that power is not limited to "extraordinary situations," it must be done "upon 'balancing the interest of the state against

34

fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system[.]'" State v. Hinton, 120 Hawai'i 265, 277, 204 P.3d 484, 496 (2009) (quoting State v. Moriwake, 65 Haw. 47, 56, 647 P.2d 705, 712 (1982)). In State v. Fukuoka, 141 Hawai'i 48, 404 P.3d 314 (2017), a HRPP Rule 48 case, we noted that in State v. Coyaso, 73 Haw. 352, 357, 833 P.2d 66, 69 (1992), we stated that "prejudice to the defendant may [also] be a relevant consideration in the trial court's decision to dismiss with or without prejudice" under HRPP Rule 48. Fukuoka, 141 Hawai'i at 56, 404 P.3d at 322.

Estencion and its progeny lay out appropriate considerations for a trial court in its determination of whether to dismiss a criminal charge with or without prejudice in the context of a pre-conviction dismissal for a Modica violation. We hold that in the context of a pre-conviction dismissal for a Modica violation, in determining whether to dismiss the case with or without prejudice, the court must consider each of the following factors: the seriousness of the offense, the facts and the circumstances of the case that led to the dismissal, the impact of a reprosecution on the administration of justice, and prejudice to the defendant. Estencion referred to the delineated factors as being "among others"; therefore, a court may also consider other factors it deems relevant. The court must, however, articulate the reasons for its decision to

dismiss with or without prejudice.  Cf. Fukuoka, 141 Hawai'i at 65, 404 P.3d at 331 ("In analyzing whether to dismiss a case with or without prejudice for a violation of HRPP Rule 48, the court must evaluate each Estencion factor and determine whether the balance of factors weighs in favor of permitting or prohibiting reprosecution.")

In this case, as argued by the State, the district court dismissed the charges with prejudice without providing any reasons for its decision.  We therefore remand these cases to the district court for application of the appropriate factors regarding whether the charges should be dismissed with or without prejudice.

### IV.  Conclusion

For the reasons stated above, we vacate the ICA's July 31, 2017 judgment on appeal, filed pursuant to its June 30, 2017 SDO, which vacated the district court's October 16, 2015 order, and we remand these cases to the district court for further proceedings consistent with this opinion.

Antoinette Lilley and            /s/ Mark E. Recktenwald
James S. Tabe
(John M. Tonaki and              /s/ Paula A. Nakayama
Audrey L. Stanley
with them on the briefs)         /s/ Sabrina S. McKenna
for petitioners
                                 /s/ Richard W. Pollack

Brian R. Vincent
(Keith M. Kaneshiro             /s/ Michael D. Wilson
with him on the briefs)
for respondent

