**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-21-0000284**
**10-FEB-2023**
**07:50 AM**
**Dkt. 66 SO**

NO. CAAP-21-0000284

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CASIE K. COCHRAN, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DCC-20-0002082)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Nakasone, JJ.)

Defendant-Appellant Casie Cochran (**Cochran**) appeals from the "Notice of Entry of Judgment and/or Order" (**Judgment**) entered by the District Court of the First Circuit, Honolulu Division (**District Court**), on March 18, 2021.[1]

The State of Hawai'i (**State**) charged Cochran by complaint with Cruelty to Animals in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 711-1109(1)(f) (2014). Cochran pleaded not guilty and waived her right to a jury trial. A bench trial was held on March 18, 2021.

State Deputy Sheriff Bryson Nakamoto (**Deputy Nakamoto**) testified that he was on duty patrolling "the airport section" on January 5, 2020. At about 3:20 p.m. he drove past the Enterprise lot and saw a dog that "appeared to be caged and locked" in a kennel. The dog was "panting heavily," its "tongue was out, and

---

[1] The Honorable Karin L. Holma presided.

it was inhaling and exhaling at a -- a great interval. And its movements was [sic] also slow." The dog was in direct sunlight, adjacent to a tent but not under it. The kennel contained a bowl of food and a second bowl that was overturned and empty. Deputy Nakamoto searched the parking lot but found no one there. Deputy Nakamoto testified Cochran approached him at about 4:00 p.m. According to Deputy Nakamoto, Cochran identified herself as the dog's owner and stated she was the lot attendant. She also stated that she had last checked on the dog at 2:00 p.m. and the dog was okay at that time. Deputy Nakamoto issued a citation to Cochran and left the lot without removing the dog from Cochran's care.

Cochran testified that she set up the dog's food and water bowls in the kennel at the beginning of her shift. She was called away from the lot at about 2:00 p.m., so she left the dog under the shade of the tent. Cochran testified she "rolled by a couple times" in a van to check on the dog, but did not say when that occurred. She stated she saw the dog laying in the kennel, not panting, with water in her bowl, and there was cloud coverage. Cochran also testified the dog liked to flip the water bowl over with her nose and roll in the water. Cochran testified that around 3:00 p.m. she received a call from her manager that she needed to get to the lot because "[t]here are cops there."

The District Court found Cochran guilty as charged:

> THE COURT: . . . . So the Court finds you guilty, Ms. Cochran. Under Hawaii Revised Statutes 711-1109, a person commits the offense of Cruelty to Animals in the Second Degree if the person intentionally, knowingly, or recklessly confines or causes to be confined in a kennel or cage any pet animal in a cruel or inhumane manner.
>
> The Court is particularly persuaded by the picture of Exhibit 1, which shows the dog Puya in a — in a cage in the sun. It is in this Court's opinion cruel and inhumane to have a dog in the cage in the sun on asphalt without water. And I understand you testified that your boyfriend may have come along and given it water. But that just by definition is cruel and inhumane. They can be without food. They cannot be without water. And I don't — I don't know when he last had his water.
>
> So the Court — Court understands that you did not perhaps intentionally cause this situation. And — but the Court finds that it was reckless. And understand that you were called away from your job or — but we can't have that

> kind of treatment of animals.  And again, I understand you
> love this dog and you think you are doing the very best for
> this dog.  But Exhibit 1 shows that — that just can't
> happen.

(Emphases added.)  The Judgment was entered.[2]  This appeal followed.

Cochran raises three points of error: (1) "The trial court erred when it concluded that under HRS § 711-1109(1)(f), as a matter of law, it is cruel and inhumane to confine an animal in a cage, in the sun, on asphalt, and without water"; (2) "The trial court erred when it concluded that because it could not determine how long [Cochran's dog] Puya was confined without any water before Cochran's boyfriend gave her some water, it had to find and conclude that the confinement was cruel and inhumane"; and (3) "The trial court erred when it found and concluded that the evidence was sufficient to prove that Cochran was guilty of Cruelty to Animals in violation of HRS § 711-1109(1)(f)."

For the reasons explained below, we affirm.

## I.  Statutory Interpretation and Overlapping Statutes

This court ordered supplemental briefing on the following issue:

> whether it was error for the district court to convict
> Cochran of violating HRS § 711-1109(1)(f) when, at the time
> subsection (f) was enacted, it was already a violation of
> HRS § 711-1109(1)(b) for a pet owner to deprive a pet of
> water and protection from sun, and Cochran was not charged
> with violating HRS § 711-1109(1)(b).

The State filed a supplemental brief, but Cochran did not.  In its supplemental brief, the State gave an equivocal response, stating:

> After consideration of this Court's order and a review of
> the record, the State acknowledges that the district court
> may have erred when in convicted Defendant of violating HRS
> § 711-1109(1)(f) especially in light of the district court's
> emphasis and stated reasoning. Based on the evidence and
> testimony the district court focused on and given the
> court's oral ruling, its determination more appropriately
> supports subsection (1)(b) as opposed to subsection (1)(f).
> While a prosecutor is free to choose between subsections
> which may overlap, it would appear here that the Legislature
> intended subsection (1)(b), as opposed to (1)(f), to cover
> the conduct relied upon by the district court in this case.

---

[2]  In sentencing Cochran, the District Court imposed no fine, no probation, and no imprisonment.

> The testimony adduced at trial and the district court's factual findings and stated reasoning in support of its verdict may be deemed as more correctly a violation of subsection (1)(b) as opposed to subsection (1)(f) where (1)(b) addresses the specific conduct as opposed to the more general conduct of "cruel and inhumane" in subsection (1)(f) which was likely intended to cover other treatment/conditions of animals.  To the extent the district court's findings in support of its ruling were focused on the specific conduct as covered by subsection (1)(b), then the district court may have erred in finding Cochran guilty of violating subsection (1)(f).

(Emphases added.)  Notably, the State does not cite any authority for its confession of possible error.

Although great weight is granted when the prosecution confesses error, Territory v. Kogami, 37 Haw. 174, 175 (Haw. Terr. 1945), "appellate courts have an independent duty 'first to ascertain that the confession of error is supported by the record and well-founded in law and second to determine that such error is properly preserved and prejudicial.'"  State v. Veikoso, 102 Hawaiʻi 219, 221-22, 74 P.3d 575, 577-78 (2003) (citation omitted).  "In other words, 'a confession of error by the prosecution is not binding upon an appellate court[.]'"  Id. at 222, 74 P.3d at 578 (citation omitted).

There is no authority or analysis in the State's supplemental brief as to the proper statutory construction of HRS § 711-1109(1)(f).  In our interpretation of statutes, we follow these guidelines:

> Our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

Castro v. Melchor, 142 Hawaiʻi 1, 11, 414 P.3d 53, 63 (2018) (citation omitted).

HRS § 711-1109(1) (2014) provides, in pertinent part:

(1)    A person commits the offense of cruelty to animals in the second degree if the person intentionally, knowingly, or recklessly:

. . . .

(b)    Deprives a pet animal of necessary sustenance or causes such deprivation;

. . . .

(f)    Confines or causes to be confined, in a kennel or cage, any pet animal in a cruel or inhumane manner[.]

HRS § 711-1100 (Supp. 2015) defines "Necessary sustenance" as "care sufficient to preserve the health and well-being of a pet animal" and includes "[o]pen or adequate access to water in sufficient quantity and quality to satisfy the animal's needs" and access to protection from the sun.[3]

---

[3]    "Necessary sustenance" is defined in HRS § 711-1100 and provides:

"Necessary sustenance" means care sufficient to preserve the health and well-being of a pet animal, except for emergencies or circumstances beyond the reasonable control of the owner or caretaker of the pet animal, and includes but is not limited to the following requirements:
(1)    Food of sufficient quantity and quality to allow for normal growth or maintenance of body weight;
(2)    <u>Open or adequate access to water in sufficient quantity and quality to satisfy the animal's needs</u>;
(3)    <u>Access to protection from wind, rain, or sun</u>;
(4)    An area of confinement that has adequate space necessary for the health of the animal and is kept reasonably clean and free from excess waste or other contaminants that could affect the animal's health; provided that the area of confinement in a primary pet enclosure shall:
(a)    Provide access to shelter;
(b)    Be constructed of safe materials to protect the pet animal from injury;
(c)    Enable the pet to be clean, dry, and free from excess waste or other contaminants that could affect the pet animal's health;
(d)    Provide the pet animal with a solid surface or resting platform that is large enough for the pet animal to lie upon in a normal manner . . .;
(e)    Provide sufficient space to allow the pet animal, at minimum, to do the following:
(i)    Easily stand, sit, lie, turn around, and make all other normal body movements in a comfortable manner for the pet animal, without making physical contact with any other animal in the enclosure; and
(ii)    Interact safely with other animals within the enclosure; and
(continued...)

There is nothing in the plain language of either HRS § 711-1109(1)(b) or (1)(f), or in the definition of "necessary sustenance" under HRS § 711-1100, that indicates the language "cruel or inhumane" in subsection (1)(f) must mean something other than what is covered by (1)(b).  Further, the legislative history does not indicate such an intent by the legislature.  Subsection (1)(f) was adopted in 2009 through Act 160, which was initially introduced as S.B. No. 1222.  See 2009 Haw. Sess. Laws Act 160, § 1 at 488-49.  S.B. No. 1222 initially proposed to, inter alia, create a new section addressing confinement of a pet on public property but was amended several times during the course of the legislative session.  See Conf. Comm. Rep. No. 85, in 2009 House Journal, at 1612-13, 2009 Senate Journal, at 852-53; H. Stand. Comm. Rep. No. 1566, in 2009 House Journal, at 1483; S. Stand. Comm. Rep. No. 590, in 2009 Senate Journal, at 1168-70.  The primary focus of the legislature in adopting subsection (1)(f) appears to be the manner in which pet animals are confined.  Again, however, nothing in the legislative history of Act 160 suggests that the legislature intended that "cruel or inhumane" in subsection (1)(f) must mean something other than what was covered by subsection (1)(b).

HRS § 711-1109 as a whole addresses "[c]ruelty to animals" and "we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose."  Castro, 142 Hawaiʻi at 11, 414 P.3d at 63.  Although there is no statutory definition for "cruel or inhumane" related to subsection (1)(f), subsection (1)(f) should be read in pari materia with the entire statute and the definition of "necessary sustenance" in HRS § 711-1100, to assist in interpreting "cruel or inhumane".  See HRS § 1-16 ("Laws in pari materia, or upon the same subject matter, shall be construed with

_____

(...continued)
         (5)   Veterinary care when needed to prevent suffering.

(Emphases added.)

reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.").

As the Hawaiʻi Supreme Court has recognized,

> [s]tatutes may on occasion overlap, depending on the facts of a particular case, but it is generally no defense to an indictment under one statute that the accused might have been charged under another.  Under those circumstances, the matter is necessarily and traditionally subject to the prosecuting attorney's discretion.

State v. Modica, 58 Haw. 249, 251, 567 P.2d 420, 422 (1977) (emphases added) (citations omitted); see also State v. Sasai, 143 Hawaiʻi 285, 295, 429 P.3d 1214, 1224 (2018).  Thus, it was not improper to convict Cochran under HRS § 711-1109(1)(f) even though she arguably could have also been charged under subsection (1)(b).

The State's supplemental brief further asserts that, "[t]o the extent the district court's findings in support of its ruling were focused on the specific conduct as covered by subsection (1)(b), then the district court may have erred in finding Cochran guilty of violating subsection (1)(f)."  However, the District Court's findings did not focus only on conduct covered by subsection (1)(b).  The District Court noted its reliance on Exhibit 1 and stated that "[i]t is in this Court's opinion cruel and inhumane to have a dog in the cage in the sun on asphalt without water."  (Emphasis added.)  The District Court's reasoning that the dog was in a cage and on asphalt does not focus on conduct covered by subsection (1)(b), as those factors are not required for a subsection (1)(b) violation.  Only the District Court's reasoning that the dog was in the sun and without water are factors expressly pertinent to a subsection (1)(b) violation, given the definition of "necessary sustenance." In short, the District Court stated a combination of factors that it found constituted "cruel or inhumane" conduct, only two of which are expressly pertinent to a subsection (1)(b) violation.

Therefore, after full consideration of the issue and in light of our interpretation of subsection (1)(f), we conclude the State's equivocal confession of error is not well-founded in law

or supported by the record.  <u>Veikoso</u>, 102 Hawaiʻi at 221-22, 74 P.3d at 577-78.

## II.  Points Raised By Cochran

With regard to Cochran's first point of error, we conclude the District Court did not rule "as a matter of law." Rather, the District Court noted it's reliance on Exhibit 1, a picture of the dog when it was found in the cage by Deputy Nakamoto, and then the District Court stated "[i]t is in this Court's opinion cruel and inhumane to have a dog in the cage in the sun on asphalt without water."  Considering the record in full and in context, the District Court did not make a ruling as a matter of law.

With regard to Cochran's second point of error, Cochran is wrong in asserting that the District Court "concluded that because it could not determine how long [the dog] Puya was confined without any water before Cochran's boyfriend gave her some water, it had to find and conclude that the confinement was cruel and inhumane."[4]  The District Court did not make the conclusion asserted by Cochran and thus this point lacks merit.

With regard to Cochran's third point of error, that there was insufficient evidence to support her conviction under HRS § 711-1109(1)(f), it is well-established that:

> Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

<u>State v. Richie</u>, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998), <u>as amended</u> (Aug. 3, 1998) (quoting <u>State v. Quitog</u>, 85 Hawaiʻi 128, 145, 938 P.2d 559, 576 (1997)) (brackets omitted).  Further, "it is well-settled that an appellate court may affirm a judgment of the lower court on any ground in the record that supports

---

[4]  Cochran testified that, a few minutes before she got to the lot (apparently after she was called to go back), her boyfriend had arrived there, let the dog out, and gave it water.

affirmance."  State v. Enos, 147 Hawaiʻi 150, 164, 465 P.3d 597, 611 (2020) (citation and internal quotations omitted).

Here, the record establishes substantial evidence to support the District Court's conclusion that Cochran is guilty under HRS § 711-1109(1)(f).  There is no dispute that Cochran confined her pet dog in a kennel or cage; the dispute is whether Cochran recklessly did so in a "cruel or inhumane manner."

As noted before, there is no statutory definition for "cruel or inhumane" applicable to subsection (1)(f).  Thus, we consider the plain meaning of the terms.  "Cruel" is defined as "disposed to inflict pain or suffering : devoid of humane feelings" or "causing or conducive to injury, grief, or pain."[5] The term "inhumane" is defined as "cruel and causing suffering to people or animals[.]"[6]  Further, reading subsection (1)(f) *in pari materia* with the statute as a whole and the definition of "necessary sustenance," we conclude it is relevant in this case to consider whether the dog was confined in a manner that it did not have "necessary sustenance" as part of determining whether Cochran's conduct was "cruel or inhumane."  Thus, here, it was relevant whether the dog had "access to water in sufficient quantity . . . to satisfy [its] needs" and whether the dog had "access to protection from . . . [the] sun[.]"  HRS § 711-1100 (definition of "necessary sustenance").

The District Court found that Cochran's conduct was not intentional or knowing, but instead was reckless.  We agree with this determination.

With respect to what constituted the cruel or inhumane conduct, the District Court expressly noted its reliance on Exhibit 1, a picture showing the dog in the kennel completely in the sun with no shade, on asphalt, and a water bowl turned over. In addition to these factors, viewing the evidence under the

---

[5]  See cruel, Merriam-Webster, https://www.merriam-webster.com/dictionary/cruel (last visited Feb. 7, 2023).

[6]  See inhumane, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/inhumane (last visited Feb. 7, 2023).

applicable standard of review, the kennel was about 50 inches by 30-40 inches, and Cochran left the dog in the kennel from between 2:00 p.m. and 3:20 p.m. in the afternoon.  The dog was discovered by Deputy Nakamoto, who testified, *inter alia*, the dog did not have any water, was panting heavily (inhaling and exhaling at a great interval) throughout his observation of the dog, and the dog was moving slowly.  Deputy Nakamoto also testified that the kennel was dry, that "it felt hot that day," and he believed the dog was in immediate danger of overheating and was concerned for the dog's safety.

With regard to when the dog last had water, Cochran testified that her dog liked to turn its water bowl over.  She also testified that she "rolled by" sometime after 2:00 p.m. to check on her dog, but Deputy Nakamoto testified that Cochran told him the last time she had checked on the dog was at 2:00 p.m.  Under the applicable standard of review, we must view the evidence in the light most favorable to the prosecution.

Given the above, we conclude there is sufficient evidence in this case to support the District Court's determination that Cochran violated HRS § 711-1109(1)(f).

### III.  Conclusion

For the foregoing reasons, the "Notice of Entry of Judgment and/or Order" entered by the District Court of the First Circuit, Honolulu Division, on March 18, 2021, is affirmed.

DATED:  Honolulu, Hawaiʻi, February 10, 2023.

On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender,
For Defendant-Appellant

Loren J. Thomas,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge